(67 P.3d 850)

No. 87,960

STATE OF KANSAS, *Appellee*, v. FRANK A. MEINERT, *Appellant*.

Opinion filed April 25, 2003.

*Sarah Ellen Johnson*, assistant appellate defender, for the appellant.

*Boyd K. Isherwood*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before ELLIOTT, P.J., LEWIS, J., and STEPHEN D. HILL, District Judge, assigned.

LEWIS, J: This case is an excellent example of the cumulative error rule.

Defendant Frank A. Meinert made a big mistake by going with his stepbrother, Tyran Tankard, to play pool on one particular evening. Defendant and three other individuals spent the evening playing pool and hanging around with friends. They ultimately went to Shawn Casey's girlfriend's house in Andover. When they left there, Lonnie Pearson advised them that they were going to the house of a man who owed him some money.

The unfortunate debtor was an individual by the name of Michael Rem. The group went to Rem's front door, noticed that it was open, and decided to go into the house. Contrasting that, Rem testified that all four men were at the door and forced themselves inside when he answered. Defendant thought the house was "just another place to have fun."

Defendant may have had fun, but Rem did not. Pearson began screaming at Rem about a sum of money Rem owed him. The record indicates that when Rem stated he did not have the money, Pearson started hitting Rem.

Even though Pearson may have struck the first blow, the other three, including defendant, joined in beating on Rem. Defendant testified he did not participate in the beating, but there is substantial evidence to contradict that testimony.

They continued beating on Rem until they backed him into the bedroom of his girlfriend, Ramona Ramirez. She must have been

somewhat surprised when the entire group fell on top of her bed where she was asleep. Ramirez crawled out of bed and into the living room to call for help. She was screaming and frightened. Defendant testified she was "adding fuel to the flames." Defendant admits he told Ramirez to "shut the fuck up" because he was trying to stop what was happening.

Rem testified that defendant hit him at least twice and that defendant yelled at him, stating, "I'll fucking kill you if you don't have the money or tell me where the money is at." The fight apparently moved back and forth between the living room and the bedroom, and there was testimony that during this time, defendant was not only hitting Rem, he was instructing the others on how to hit and kick Rem.

Ramirez testified that at one point, defendant told her: "[S]hut up, you fucking bitch. Basically, sit in the chair, and, fucking bitch, I'll knock the shit out of you. I'll kill you. Sit in the chair and shut up. It's none of your business."

After confronting Ramirez, defendant went out where the fight was still going on and told the others that Ramirez had called 911. The fight then stopped and, eventually, two officers arrived at the home. Casey and Pearson were taken into custody, but Tankard and defendant fled the scene. About 40 minutes later, defendant was stopped about 4 blocks from the crime scene and taken into custody. Defendant was charged with aggravated burglary, attempted aggravated robbery, and two counts of criminal threat. He was convicted and sentenced to 88 months' imprisonment. This appeal followed. Defendant raises several issues on appeal.

## LONNIE PEARSON'S STATEMENT

Defendant first argues that the trial court erred by not allowing the introduction of Pearson's statement to the police. The evidence was necessarily hearsay because Pearson had asserted his Fifth Amendment rights and refused to testify at defendant's trial. On appeal, defendant argues these statements were a statement against interest and an exception to the hearsay rule.

The admission of evidence lies within the sound discretion of the trial court. We apply an abuse of discretion standard on review. *State v. Lumley,* 266 Kan. 939, 950, 976 P.2d 486 (1999).

At trial, charges were still pending against Pearson and, thus, he had every right to invoke his Fifth Amendment rights. However, in the statement to which defendant refers, Pearson indicated he was the one assaulting Rem and that the others were pulling him off of Rem and trying to stop the fight. The State objected to the evidence as hearsay, and defendant's counsel offered several possible hearsay exceptions, including the declaration against interest exception.

K.S.A. 2002 Supp. 60-460(j) indicates that certain hearsay out-of-court statements are admissible in court if the trial court finds that the proffered hearsay statement was at the time of assertion so far contrary to the declarant's interest or subjected the declarant to civil or criminal liability to the extent that a reasonable person would not have made the statement unless he or she believed it to be true. This is the statement against interest exception to the hearsay rule. *State v. Cooper*, 20 Kan. App. 2d 759, 761-62, 892 P.2d 909, *rev. denied* 257 Kan. 1093 (1995).

It appears to us that Pearson's statement was clearly a declaration against interest. Pearson's statement was a confession to battery after he was given his *Miranda* rights and after he had agreed to talk with police. In admitting he was the one who beat on Rem, Pearson was confessing to a crime and surely knew that criminal charges would follow. A confession would qualify as a declaration against interest. The Kansas Supreme Court has previously found statements by a codefendant to be admissible under this exception. *State v. Jones*, 246 Kan. 214, 219, 787 P.2d 726 (1990).

We hold the trial court erred in refusing to admit Pearson's statement under the statement against interest exception to the hearsay rule. The problem is that this error is subject to the harmless error analysis and may not be in and of itself reversible error.

" 'The admission or exclusion of relevant evidence in a criminal case is governed by two rules, the harmless error rule and the federal constitutional error rule. K.S.A. 60-261 sets out the harmless error rule. Error in the admission or exclusion of evidence by the court is not grounds for granting a new trial or setting aside a verdict unless refusal to take such action appears to the court inconsistent with substantial justice. At every stage of the proceeding, the court must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. When reviewing the erroneous admission or exclusion of evidence,

the error is harmless if no substantial right of the defendant is involved.' " *State v. Bornholdt*, 261 Kan. 644, 660, 932 P.2d 964 (1997) (quoting *State v. Sanders*, 258 Kan. 409, 418, 904 P.2d 951 [1995]).

While it is true that Pearson's statement indicated he was beating Rem and the others were attempting to pull him off, he never clearly stated that the others were never involved in the fight. There were several eyewitnesses who testified that defendant also hit Rem. It is difficult for us to conclude that the admission of Pearson's statement in and of itself would change the result of the trial.

Accordingly, the trial court's error in refusing to admit Pearson's statement was harmless error. Harmless error does not require us to reverse a defendant's conviction.

## DEFENDANT'S ACTIONS AT THE POLICE STATION

The trial court admitted into evidence testimony about defendant's actions and demeanor during the police interview after his arrest. Defendant argues on appeal that the admission of this testimony was error. We agree.

In order for the evidence to have been relevant, it must have been "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). To establish relevancy, there must be some material or logical connection between the asserted facts and the inference or result they are designed to establish. *Lumley*, 266 Kan. at 950-51.

In addition, defendant argued the evidence was unfairly prejudicial and, under those circumstances, it is the obligation of the trial court to weigh the probative value of the evidence against its prejudicial effect. If the prejudicial effect of the evidence outweighs the probative value of the evidence, then the evidence should have been excluded. 266 Kan. at 951.

During the trial, the State asked questions about what occurred after defendant's arrest. Defense counsel objected and asked for a bench conference. The State indicated it wanted to use evidence that showed defendant was hostile and violent while in custody. It maintained this was relevant to dispute defendant's claim that he had been a peacemaker on the night of the fight. Over the de-

fendant's objection, this testimony was allowed into evidence. On cross-examination, defendant denied beating on the door of the interview room and denied moving towards the officer. He admitted he had to be taken forcibly to the floor when they took his shoes away. In addition to a statement concerning defendant's activities at the police station, the State further introduced into evidence the testimony of an officer about defendant's behavior.

We conclude that the trial court erred in admitting this evidence. Under K.S.A. 60-446, evidence about specific instances of conduct are admissible only when an individual's character is at issue. In this case, defendant did not put his character into question. He made no claim that he was a general peacemaker. Since he made no claims about his general character, the evidence about his behavior at the police station was inadmissible under K.S.A. 60-446.

We view the evidence in question and conclude it is irrelevant, it had no probative value, and it was extremely prejudicial to defendant. This evidence did not establish any element of the crime or aid in identification or motive. The evidence was irrelevant and inflammatory.

Again, the harmless error rule applies in this instance. We are unable to say that if this evidence had not been admitted, the result of the trial would have been different. In other words, while we conclude that the admission of this evidence is error, we also conclude that it was harmless error.

## INSTRUCTIONS

Defendant next argues the trial court erred when it failed to instruct the jury on the lesser included offense of theft. We have examined the record and find that defendant did not request this instruction on theft, which is a lesser included offense of robbery.

The failure to give an instruction under these circumstances is clearly erroneous if we conclude that absent the alleged error, there was a real possibility the jury would have returned a different verdict. *State v. Sims*, 262 Kan. 165, 172, 936 P.2d 779 (1997).

There are basically three crimes which might fit the facts of the evidence against defendant: (1) robbery, which is the taking of property from the person or presence of another by force or by

threat of bodily harm to any person—K.S.A. 21-3426; (2) aggravated robbery, which is a robbery committed by a person armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery—K.S.A. 21-3427; and (3) theft, which is obtaining or exerting unauthorized control over property, obtaining by deception control over property, or obtaining by threat control over property with intent to deprive the owner permanently of the possession, use, or benefit of the owner's property—K.S.A. 2002 Supp. 21-3701.

We believe the trial court should have instructed the jury on the lesser included offense of theft. The theft was not from Rem; it was from Ramirez. The theft was separate from the fight. The taking of the property from Ramirez' purse could be viewed as separate from the fight, which would necessitate the lesser included offense of theft. We conclude the evidence at trial did not exclude a theory of guilt on this lesser offense.

However, we also conclude the failure to instruct was not clearly erroneous. There is no real possibility the jury would have returned a different verdict if the trial error had not occurred. This results in the legal conclusion that the failure to instruct on theft was not clearly erroneous, and it was not reversible error.

## ASSAULT VERSUS CRIMINAL THREAT

Defendant next argues his conviction of criminal threat must be reversed because assault, as a specific statute, controls over the general statute of criminal threat. In other words, defendant claims that his activities on the night in question were assault but they were not criminal threat.

We must determine whether assault, as a specific statute, controls the general statute of criminal threat.

The law in Kansas is that general and special statutes should be read together and should be harmonized if possible. To the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling. *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./ Kansas City*, 264 Kan. 293, Syl. ¶ 9, 955 P.2d 1136 (1998).

Assault is "intentionally placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 21-3408. Criminal threat is any threat to "[c]ommit violence communicated with intent to terrorize another." K.S.A. 2002 Supp. 21-3419(a)(1). Criminal threat requires a specific intent such as the intent to terrorize. *State v. Esher*, 22 Kan. App. 2d 779, 783, 922 P.2d 1123, *rev. denied* 260 Kan. 997 (1996). Assault is a general intent crime. *State v. Eichman*, 26 Kan. App. 2d 527, 530, 989 P.2d 795, *rev. denied* 268 Kan. 890 (1999).

Defendant argues he should have been charged with assault because it is more specific than criminal threat. He suggests that criminal threat is directed towards the general class of people who make threats to terrorize others, while assault applies to a person who makes a specific type of threat that places an individual into apprehension of immediate bodily harm.

We conclude that defendant's argument is without merit. The criminal threat statute states that a criminal threat is a threat to commit violence to terrorize "another," not a group or class of people. We agree that in this case the State might have charged defendant with assault, but the criminal threat statute was selected. We do not see where one statute is more specific than another. The trial court did not err in this regard.

Defendant next argues the trial court erred by instructing the jury on attempted aggravated robbery where there was no evidence to support such an instruction. Once again, defendant did not object to the lesser included instruction.

According to the record, Ramirez testified that $35 to $60 in cash was missing from her purse. She testified that Pearson and defendant dumped and looked through the contents of her purse. No money was recovered by the police.

Defendant's argument has no merit. In order to be guilty of an attempt, a defendant must necessarily fail in the commission of a crime. K.S.A. 21-3301(a). No one saw defendant take the money, the money was not recovered, and, therefore, it is not clear that defendant successfully completed the crime of aggravated robbery.

We conclude the trial court probably should have given the lesser included offense instruction. However, that error alone does not require a reversal of defendant's conviction.

The cumulative trial error rule is clearly defined as follows:

" 'Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant.' *State v. Lumbrera,* 252 Kan. 54, Syl. ¶ 1, 845 P.2d 609 (1992)." *State v. Plaskett,* 271 Kan. 995, 1022, 27 P.3d 890 (2001).

This was not a well tried case. As we have indicated, the trial court committed error on a number of occasions, but those errors were harmless only and not reversible when viewed individually. However, when we look at the cumulative effect of all the errors made, we find that defendant was substantially prejudiced and deprived of a fair trial. We seldom see a case with this many errors that is not reversed on a specific point. This case was so poorly tried and so many errors were made that we have no option but to reverse defendant's convictions and remand the matter for a new trial.

Reversed and remanded.