No. 100,445
No. 100,835

STATE OF KANSAS, *Appellee*, v. ROBERT WILLIAM RICHARDSON, *Appellant*.

(209 P.3d 696)

Opinion filed June 19, 2009.

*Lydia Krebs*, of Kansas Appellate Defender Office, argued the cause and was on the brief for the appellant.

*Amy L. Aranda*, assistant county attorney, argued the cause, and *Marc Goodman*, county attorney, and *Steve Six*, attorney general, were with her on the brief the appellee.

The opinion of the court was delivered by

JOHNSON, J.: Robert W. Richardson, II, appeals his convictions and sentences for two counts of exposing another to a life-threatening communicable disease. Richardson claims the statute defining the crime, K.S.A. 21-3435, is unconstitutionally vague; that the district court erred in failing to treat K.S.A. 21-3435 as a specific intent crime; that, alternatively, the evidence was insufficient to convict him of violating K.S.A. 21-3435; and that the use of his criminal history to increase his sentences violated the Sixth Amendment to the United States Constitution.

For more than a decade, Richardson has known that he is infected with the human immunodeficiency virus (HIV), a viral infection that attacks the immune system of the body, making it susceptible to infections. HIV can advance into acquired immunodeficiency syndrome (AIDS), where the immune system begins to fail and renders the body susceptible to a number of other diseases and conditions. If an immune system is weak enough, severe infections can result in death. Neither HIV nor AIDS is currently curable.

In October 2005, Richardson had sexual intercourse with two females, M.K. and E.Z. At the time, Richardson was being treated to lower the number of HIV particles in his blood, which is measured by a "viral load" test. A February 2005 viral load test had revealed 11,700 parts per milliliter, which was characterized as a medium level of the virus. Prior to that time, Richardson had consistently measured very low levels of HIV, and, accordingly, Richardson was prescribed a new medication. The next viral load test occurred in November 2005, after the incidents of sexual intercourse. The result was a viral load level of less than the minimum which could be measured, *i.e.*, less than 50 parts per milliliter.

In separate cases filed in May and June 2006, the State charged Richardson with violating K.S.A. 21-3435 for having sexual intercourse with M.K. and E.Z. Over Richardson's objection, the district court consolidated the two cases. The district court denied Richardson's motion to dismiss based upon a claim that K.S.A. 21-3435 is unconstitutionally vague because it does not define what it means to "expose" someone to a disease and it does not clarify what makes a disease "life threatening" or "communicable." Richardson then waived his right to a jury trial and proceeded to a bench trial, which included the parties' stipulations that Richardson knew he was infected with HIV; that he engaged in sexual intercourse with M.K. on or about October 17, 2005, and he engaged in sexual intercourse with E.Z. between October 1, 2005, and October 30, 2005, both in Lyon County; and that the term "sexual intercourse" meant "penetration of the female sex organ by the male sex organ."

Other than the parties' stipulations, the evidence submitted during Richardson's bench trial consisted entirely of the testimony of two medical doctors: Dr. Christopher Penn called by the State and Dr. Clifton Jones called by the defense. Dr. Penn had been Richardson's treating physician from 2003 to the end of 2005. The testimony of both doctors concentrated on whether HIV may be transmitted when a viral load level is low or undetectable and the effect of the virus on an infected individual's lifestyle.

Richardson defended on the basis that the State had failed to establish that HIV is always a life-threatening disease; that he had actually exposed the victims to the disease because of the lack of evidence that bodily fluids were exchanged during intercourse; or that he had the specific intent to expose his sexual partners to HIV. The district court found Richardson guilty on both counts and sentenced him to consecutive prison terms. Richardson appealed, and this court transferred the case from the Court of Appeals on its own motion.

## SPECIFIC INTENT CRIME

We take the liberty of rearranging the order in which we address the issues, first considering whether K.S.A. 21-3435 is a specific intent crime. The district court did not specifically say that it was

interpreting K.S.A. 21-3435 as only requiring a general criminal intent. However, Richardson insists that the district court must have applied that interpretation because it found Richardson guilty without the State presenting any evidence of a specific intent to expose the victims to HIV. The State counters that, despite the language of the applicable statute, the legislature intended to create a general intent crime.

Except for limited instances described in K.S.A. 21-3204, "a criminal intent is an essential element of every crime defined by [the criminal] code." K.S.A. 21-3201(a). The requisite general criminal intent must be established by proof that the defendant's conduct was intentional, unless the statute defining the crime expressly provides that the prohibited act is criminal if done in a reckless manner. K.S.A. 21-3201(a).

However, in addition to the nearly omnipresent general criminal intent requirement, some crimes require an additional, specific intent. See *State v. Sterling*, 235 Kan. 526, 527, 680 P.2d 301 (1984). The distinction between general intent and specific intent crimes is "whether, in addition to the intent required by K.S.A. 21-3201, the statute defining the crime in question identifies or requires a further particular intent which must accompany the prohibited acts." *State v. Cantrell*, 234 Kan. 426, Syl. ¶ 7, 673 P.2d 1147 (1983), *cert. denied* 469 U.S. 817 (1984). When a crime requires a specific intent, that specific intent element "must be included in the charge and in the instructions of the court covering the separate elements" of the crime. *Sterling*, 235 Kan. at 528.

Whether a criminal statute establishes a general intent or a specific intent offense is a legal question over which appellate courts exercise unlimited review. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003) (statutory interpretation is a question of law requiring de novo review); *Sterling*, 235 Kan. at 530 (interpreting K.S.A. 21-3720 [Ensley 1981] to determine whether criminal damage to property is a specific intent offense). The analysis must begin by looking at what the legislature said when it defined the crime. See *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003) ("When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather

than determine what the law should or should not be. [Citation omitted.]"). In relevant part, the statute provides:

"(a) It is unlawful for an individual who knows oneself to be infected with a life threatening communicable disease knowingly:

(1) To engage in sexual intercourse or sodomy with another individual with the intent to expose that individual to that life threatening communicable disease." K.S.A. 21-3435(a)(1).

Clearly, the prohibited conduct is engaging in sexual intercourse or sodomy with another, when the defendant knows that he or she is infected with a life-threatening communicable disease. The statute requires the defendant to "knowingly" engage in that prohibited conduct. Therefore, pursuant to K.S.A. 21-3201(a), the general criminal intent must be established by proof of intentional conduct because the crime-defining statute does not criminalize reckless conduct. Just as clearly, K.S.A. 21-3435(a)(1) "identifies or requires a further particular intent which must accompany the prohibited acts," *i.e.*, the intent to expose the sex partner to the life-threatening communicable disease. See *Cantrell*, 234 Kan. 426, Syl. ¶ 7.

The State acknowledges that, on its face, K.S.A. 21-3435(a)(1) purports to be a specific intent crime. However, the State does not acknowledge that this state's appellate courts have consistently interpreted statutes that define a crime by using the phrase "with intent to" as requiring a specific intent element. See, *e.g.*, *State v. Harper*, 235 Kan. 825, 827, 685 P.2d 850 (1984) (burglary, [K.S.A. 21-3715(a)], defined as entering a building "with intent to commit a felony, theft or sexual battery therein," is a specific intent crime); *State v. Wells*, 223 Kan. 94, 98, 573 P.2d 580 (1977) (indecent liberties with a child, [K.S.A. 21-3503(a)(1)], providing that prohibited conduct be done with "intent to arouse or satisfy the sexual desires of the either the child or the offender, or both," is a specific intent crime); *State v. Meinert*, 31 Kan. App. 2d 492, 499, 67 P.3d 850, *rev. denied* 276 Kan. 972 (2003) (criminal threat, [K.S.A. 21-3419(a)], defined as "any threat to . . . [c]ommit violence communicated with intent to terrorize another," requires "a specific intent such as the intent to terrorize"); *State v. Ferris*, 19 Kan. App. 2d 180, 183, 865 P.2d 1058 (1993) (contributing to child's misconduct or deprivation under K.S.A. 21-3612[a][4], defined as

"sheltering or concealing a runaway with intent to aid the runaway in avoiding detection or apprehension by law enforcement officers," requires the State to prove specific intent to aid the child in avoiding detection).

Instead, without proffering any authority, the State contends that giving effect to the statute's plain specific intent language would actually thwart the legislature's intended purpose of preventing the intentional exposure of others to HIV. The State argues that any act of sexual intercourse or sodomy by an HIV positive person, even utilizing a condom, creates some element of risk that the virus will be transmitted to the sex partner, so that total abstinence is the only means by which an infected person may avoid exposing another to HIV. Accordingly, the State suggests that the specific intent to expose another to HIV is inherently included in the defendant's general intent to engage in sexual intercourse. Under the State's interpretation, a person infected with HIV must be totally abstinent or risk being prosecuted for a felony each and every time he or she engages in sexual intercourse or sodomy, regardless of whether the act is between two consenting (perhaps married) adults with full knowledge of the virus and utilizing prophylactic measures. We disagree.

The parties did not address whether the State's interpretation might be constitutionally suspect. A person's decision to engage in private, consensual sexual conduct is protected by the United States Constitution. See *Lawrence v. Texas*, 539 U.S. 558, 156 L. Ed. 2d 508, 123 S. Ct. 2472 (2003); *Griswold v. Connecticut*, 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965). Nevertheless, if the legislature intended to criminalize all acts of sexual intercourse or sodomy by any person infected with HIV, it could certainly have said so without employing specific intent language. The State's public policy arguments cannot be reconciled with the plain language of K.S.A. 21-3435(a)(1), and we find that the statute creates a specific intent crime. The State was required to prove that Richardson, knowing he was infected with HIV, intentionally engaged in sexual intercourse with M.K. and E.Z. with the specific intent to expose them to HIV.

## CONSTITUTIONALITY OF K.S.A. 21-3435

Richardson also renews his argument that K.S.A. 21-3435 is unconstitutionally vague. Specifically, he contends that the statute fails to give adequate warning as to what is meant by a "life threatening" disease and what constitutes "expos[ing]" someone to such a disease. He argues that a person of ordinary intelligence would be unsure of what conduct is prohibited by the statute, rendering it void for vagueness.

The constitutionality of a criminal statute is a legal question over which this court exercises unlimited review. *State v. Moore*, 274 Kan. 639, 652, 55 P.3d 903 (2002). A statute is generally "presumed constitutional and all doubts must be resolved in favor of its validity." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008). Appellate courts have both the authority and the responsibility to "construe a statute in such a manner that it is constitutional," if such an interpretation can be achieved without contorting the legislature's intent for enacting it. 285 Kan. at 629-30.

A claim that a statute is void for vagueness necessarily requires a court to interpret the language of the statute in question to determine whether it gives adequate warning as to the proscribed conduct. See *State v. Adams*, 254 Kan. 436, 444-45, 866 P.2d 1017 (1994) (considering the meaning of the term "misconduct" as employed by a statute prohibiting official misconduct). Courts in this state have long recognized that under the constitutional guarantee of due process of law, a criminal statute must "convey[] a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice." *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983); see *City of Wichita v. Wallace*, 246 Kan. 253, 258, 788 P.2d 270 (1990). A statute that "either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application" violates the Fourteenth Amendment to the United States Constitution and is thus void for vagueness. *Dunn*, 233 Kan. at 418. "At its heart the test for vagueness is a commonsense determination of fundamental fairness." *State v. Kirby*, 222 Kan. 1, 4, 563 P.2d 408 (1977).

The rationale behind prohibiting vague statutes is twofold:

"First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972).

Moreover, the need for clarity of definition and the prevention of arbitrary and discriminatory enforcement is heightened for criminal statutes because criminal violations result in the loss of personal liberty. "The standards of certainty in a statute punishing criminal offenses are higher than in those depending primarily upon civil sanctions for enforcement." *City of Wichita*, 246 Kan. 253, Syl. ¶ 3. Still, the determinative question in such cases is "whether a person of ordinary intelligence understands what conduct is prohibited by" the statutory language at issue. *Adams*, 254 Kan. at 445.

Richardson devotes a great deal of his brief arguing that the term "expose" is ambiguous as to the conduct which is prohibited. He suggests that it could mean engaging in conduct which might present any risk of transmission of HIV or it could mean that the prohibited conduct must involve causing bodily fluids to actually come into contact with the other person. He also suggests that a person infected with HIV must speculate on what viral load level might be sufficient to trigger a criminally prohibited exposure or guess as to whether the exchange of bodily fluids during intercourse could constitute exposing another to the virus.

The flaw in those arguments is that the statute does not define the *prohibited conduct* as exposing another to the life-threatening disease, but rather it criminalizes sexual intercourse or sodomy with the *specific intent* to expose the sex partner to the known life-threatening communicable disease. One need not ruminate on exactly how the act must be performed to meet the legal definition

of "expose" or even know that a transmittal of the disease is possible. It is enough that the defendant *intended* to expose his or her sex partner to the disease. That state of mind is certainly a matter well within the common understanding of a defendant.

This court has previously recognized the importance of a specific intent when addressing whether a statute is unconstitutionally vague. *State v. Bryan*, 259 Kan. 143, Syl. ¶¶ 2-3, 5, 910 P.2d 212 (1996), found that a 1994 "stalking" statute was unconstitutional because it failed to provide an objective standard by which the unlawful behavior could be measured. The statute at issue in *Bryan*, K.S.A. 1994 Supp. 21-3438, prohibited engaging in a course of conduct that " 'seriously alarms, annoys or harasses' " someone else. 259 Kan. at 146. *Bryan* reasoned that the acts constituting "annoying" conduct could vary greatly because the prohibited conduct was measured by the subjective response of the victim, not the conduct of the offender. However, after holding that the statute was unconstitutionally vague, *Bryan* noted that its conclusion might have been different if "K.S.A. 1994 Supp. 21-3438 . . . require[d] that the person *specifically intend* to alarm, annoy, or harass the victim." (Emphasis added.) 259 Kan. at 155-56. That specific intent is present in K.S.A. 21-3435.

Richardson also complains that K.S.A. 21-3435 does not specifically define the term, "life threatening." Ironically, however, he states in his brief that "[t]he common sense definition of the term 'life threatening' is 'something that poses a threat to life.' " We wholeheartedly agree with that assessment and believe that it effectively refutes the contention that the statute is unconstitutionally vague on that point. A person of ordinary intelligence would understand what the statute means by the term "life threatening."

Moreover, Richardson's example that such common diseases as influenza can be life threatening does not support his argument. If, during a swine flu pandemic, a person knowingly has sexual intercourse or sodomy with another with the intent to expose the sex partner to the life-threatening influenza, then the offender has subjected himself or herself to prosecution under K.S.A. 21-3435. Of course, in that instance, the prosecutor's burden of establishing the requisite specific intent may be more difficult to carry. Nev-

ertheless, that does not make the fact that influenza may be a life-threatening communicable disease any less amenable to common understanding.

In short, we find that K.S.A. 21-3435 conveys sufficient definite warning to our citizenry as to the conduct which is proscribed and provides explicit standards for those that apply the law. The statute is not unconstitutionally vague.

## SUFFICIENCY OF THE EVIDENCE

As an alternative to his argument that K.S.A. 21-3435 creates a specific intent crime, Richardson argues that the evidence was insufficient to support his convictions because the State presented no evidence on the requisite element of specific intent, *i.e.*, that he engaged in sexual intercourse with the intent to expose M.K. or E.Z. to HIV. We review a sufficiency of the evidence challenge in a criminal case to determine "whether, after review of all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Gutierrez*, 285 Kan. 332, 336, 172 P.3d 18 (2007).

A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Garcia*, 285 Kan. 1, 22, 169 P.3d 1069 (2007). Accordingly, if there is evidence to support a finding that each of the elements of a crime has been met, this court should uphold a defendant's convictions even when the evidence was entirely circumstantial. *State v. Scott*, 271 Kan. 103, 107, 21 P.3d 516, *cert. denied* 534 U.S. 1047 (2001). However, "[c]onvictions based upon circumstantial evidence . . . can present a special challenge to the appellate court" because " 'the circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances.' " *State v. Williams*, 229 Kan. 646, 648-49, 630 P.2d 694 (1981) (quoting 1 Wharton's Criminal Evidence § 91, pp. 150-51 [13th ed. 1972]).

To establish a violation of K.S.A. 21-3435(a)(1) in this case, the State was required to prove beyond a reasonable doubt (1) that Richardson knew that he was infected with a life-threatening communicable disease; (2) that Richardson knowingly engaged in sex-

ual intercourse with M.K. and E.Z.; (3) that Richardson engaged in this conduct with the intent to expose M.K. and E.Z. to the life-threatening communicable disease; and (4) that the conduct took place in Lyon County on or about the alleged dates. At trial, the parties stipulated that Richardson knew he had HIV and that he had sexual intercourse with M.K. and E.Z. in Lyon County on or about the dates alleged in the criminal complaint. The State produced evidence by way of Dr. Penn's testimony that HIV is a life-threatening communicable disease. Thus, the only element that can be seriously disputed is Richardson's specific intent.

The State argues that the mere fact that Richardson engaged in sexual intercourse while knowing that he was infected with HIV was enough to prove that he intended to expose M.K. and E.Z. to the virus. According to the State, "there is no conceivable means by which the State could prove, *apart from the act of sexual intercourse itself*, that an HIV positive individual who knowingly engages in sexual intercourse with another acts with 'intent to expose' the other to the virus." We disagree. Prosecutors are routinely called upon to prove a defendant's specific intent in committing a prohibited act and normally must carry that burden with circumstantial evidence. Here, the State simply made no attempt to prove the requisite circumstances.

Interestingly, at the preliminary hearing, the State presented evidence that M.K. and E.Z. did not know that Richardson had HIV when they had sex with him; that Richardson did not use a condom; and that Richardson had falsely represented to E.Z. that he was free from sexually transmitted diseases. These are prime examples of proven circumstances that could support an inference that Richardson intended to expose M.K. and E.Z. to HIV. Inexplicably, the State chose not to present any of this information at trial, and those facts were not included in the parties' stipulation.

The State attempts to rectify the evidentiary oversight by arguing that condom use and disclosure of the defendant's infection are irrelevant to proving an "intent to expose" because K.S.A. 21-3435 is silent on those points, unlike similar statutes in other jurisdictions. For example, Missouri's statute, Mo. Rev. Stat. § 191.677(4) (2008 Supp.), specifically states that "[t]he use of condoms is not

a defense" to a violation of that statute. However, Missouri's statute, unlike K.S.A. 21-3435, criminalizes *reckless* sexual intercourse by a person infected with HIV. See Mo. Rev. Stat. § 191.677(2) (2000). K.S.A. 21-3435(a)(1) not only requires proof that the defendant *knowingly* engaged in sexual intercourse, but it also requires evidence of a specific intent to expose the defendant's sexual partner to a life-threatening communicable disease. Thus, under our statute, condom use can be germane to the defendant's specific intent.

Likewise, the State points to laws in other states which make consent or lack of consent an element of criminal exposure to HIV and argues that the Kansas Legislature's failure to include such language in K.S.A. 21-3435 indicates that consent is not an "affirmative defense." Again, the State misses the point. Proof that M.K. or E.Z. did not knowingly consent to engage in sexual intercourse with an HIV infected partner would not be offered to refute an affirmative defense, but rather it would merely be a circumstance in furtherance of establishing Richardson's specific intent to expose his partners to HIV.

Further, the State attempts to shift the burden of proof by arguing that Richardson "presented no direct evidence of his own belief that a low viral load could not transmit or expose another to the virus" and that he failed to demonstrate at trial that the sex with either of these women was consensual. Of course, the State has the burden of proving beyond a reasonable doubt each and every element of the crime, including Richardson's specific intent to expose M.K. and E.Z. to HIV. Richardson had no burden to *disprove* specific intent.

Finally, at oral argument, the State asserted that the trial testimony of Richardson's treating physician established that Richardson had been thoroughly educated on the risks of transmitting HIV through sexual intercourse. That knowledge, the State argues, is a circumstance which would support the specific intent element. However, Dr. Penn's testimony was less than definitive on that point. When asked by the prosecutor whether he had discussed with Richardson "safe or acceptable practices for engaging in sexual contact," the doctor replied, "I think we did early on, but I—

I can't give you a time." Subsequently, when questioned by defense counsel, the doctor conceded that his records did not reflect such counseling for Richardson, even though the doctor maintained comprehensive records which should have reflected such a conversation with a patient. In short, the doctor's testimony did not establish the circumstance which the State now asserts.

In conclusion, the record reveals that, at trial, the State failed to prove circumstances from which a rational factfinder could reasonably infer that the defendant had the specific intent to expose either M.K. or E.Z. to HIV. Instead, the State has asked us to infer or presume the requisite circumstantial evidence of specific intent from other circumstances or inferences. Such a presumption upon a presumption is insufficient to carry the State's burden. Accordingly, we find the evidence was insufficient to support the convictions and reverse in both cases.

## CRIMINAL HISTORY SCORE

Richardson argues that his sentence violates his right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution because the prior convictions used in calculating his criminal history score were not included in the complaint and were never proved to the factfinder beyond a reasonable doubt. See *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Richardson acknowledges that this argument was rejected in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), but includes the claim to "preserve [it] for federal review." Given our decision to reverse his convictions, we need not discuss this issue further.

Reversed.