213 P.3d 413 (2009)
In the Matter of C.P.W.
No. 101,017.
Supreme Court of Kansas.
July 24, 2009.
*414 Joe Shepack, county attorney, argued the cause, and Steve Six, attorney general, was with him on the brief for appellant.
No appearance by the appellee.
The opinion of the court was delivered by LUCKERT, J:
This appeal raises the question of whether the State must prove that a sex offender acted with specific intent in failing to comply with provisions of the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. We hold that K.S.A. 22-4903, which subjects to criminal liability "[a]ny person who is required to register as provided in the Kansas offender registration act who violates any of the provisions of such act," does not identify or require a particular intent beyond the general intent required by K.S.A. 21-3201 for all crimes. Consequently, specific intent is not necessary for there to be an offense committed under K.S.A. 22-4903.
This question reaches this court on a question reserved by the prosecution under K.S.A. 22-3602(b)(3) after the district court acquitted juvenile offender C.P.W. of an alleged violation of the reporting requirements of K.S.A. 22-4904. The appeal was transferred to this court on its own motion pursuant to K.S.A. 20-3018(c).
More specifically, C.P.W. was charged with failing to report in person to the office of the *415 Ellsworth County Sheriff to have his photograph taken during the month of his birthday, as required by K.S.A.2006 Supp. 22-4904(d) and (e) of the KORA. The case came before the district court for a bench trial on the parties' stipulated facts. In its journal entry, the district court adopted the following findings of fact proposed by the State:
"1) It is undisputed that the Respondent, [C.P.W.], was a resident of Ellsworth County, Kansas, at all times relevant to this case.
"2) It is also undisputed that [C.P.W.] was convicted of a violation of K.S.A. 21-3511, to wit, aggravated indecent solicitation of a child under age 14 and, thus, required to register under the Kansas Sex Offender Registration Act, found at K.S.A. 22-4901 et seq.

"3) It is uncontroverted that the Respondent was complying with sex offender registration requirements until November of 2006. During that month, which was the month of the Respondent's birth, the Respondent did not appear at the Ellsworth County Sheriff's Office to have his picture taken, fill out a form, and pay his $20.00 fee.
"4) Notwithstanding Respondent's `no show' in November of 2006, the Respondent did appear at the Sheriff's Office and comply in May of 2007 (which would be the 6th month after his birth month, as required by K.S.A. [2006 Supp.] 22-4904[d]).
"5) Respondent first became liable to register as a sex offender upon his conviction and sentence in Ellsworth County Case No. 2005-JV-02 in March of 2005. At that time, sex offenders were required to register via written reports with the Kansas Bureau of Investigation at the Topeka office of the KBI. The Kansas Legislature added more constraints or burdens to the sex offender registration process by requiring sex offenders, as of July 1, 2006, to register in person with the Sheriff's Office in the county in which they reside. Such registration was to take place in the birth month of the sex offender (which would be November for purposes of this case) and in the 6th month following the birth month. Registration with the local Sheriff's Office included the Respondent appearing in person, filling out a form, paying a $20.00 registration fee, and having his or her picture taken.
"6) The change in the law which took effect July 1, 2006, was promulgated in the 2006 Kansas Session Laws, at Chapter 214, Section 7 and in the Kansas Register on June 1, 2006, at Volume 25, No. 22. Also, the Kansas Bureau of Investigation sent notice of the new registration requirement, which took effect July 1, 2006, to all registered offenders. A copy of the KBI notice [was] attached to the [parties'] Stipulated Facts. . . . Such mailing was sent by means of 1st Class Mail, but not certified and/or certified restricted mail. It is undisputed that a Court Services Officer, Jonathan Dahlke, represented to the Respondent that his registration was in order and that he need not register with the Sheriff's Office."
The district court then focused on the lack of mens rea on the part of C.P.W., concluding:
"[T]his is a specific intent crime and the Respondent had no specific intent to violate the law as charged in the Complaint. The Court finds that the Respondent is not guilty and enters a judgment of acquittal herein."
The State appealed on a question reserved. Because C.P.W. was acquitted of the reporting charge, his guilt or innocence is no longer at issue.

State's Appeal
As a preliminary matter, we must first determine whether to accept the State's appeal on a question reserved.
Recently, this court in State v. Skolaut, 286 Kan. 219, 182 P.3d 1231 (2008), reiterated the rule that appellate courts will accept appeals of questions reserved when the issues are "`matters of statewide interest important to the correct and uniform administration of the criminal law and the interpretation of statutes,'" but will not consider cases in which the "`resolution of the question would not provide helpful precedent.'" 286 Kan. at 224-25, 182 P.3d 1231 (quoting *416 State v. Tremble, 279 Kan. 391, 394, 109 P.3d 1188 [2005]); see also, e.g., State v. Mountjoy, 257 Kan. 163, 168, 891 P.2d 376 (1995) ("We have uniformly declined to entertain questions reserved, the resolution of which would not provide helpful precedent."); State v. Leonard, 248 Kan. 427, 433, 807 P.2d 81 (1991) ("Resolution of this issue [on a question reserved] will not provide a helpful precedent; therefore, we do not entertain it.").
We conclude the standard for considering a question reserved is met by this appeal. The State's reserved question does not require this court to analyze factual circumstances unique to the present case but raises a matter of statutory interpretation that would have widespread application. Further, the issue is one of first impression, is likely to arise repeatedly, and is important to the correct and uniform administration of the criminal law. Accordingly, we accept the State's question, finding it is "a novel issue of statewide interest." State v. Hodges, 241 Kan. 183, 190, 734 P.2d 1161 (1987).

Sex Offender Reporting
As we consider the State's appeal, we must determine whether the State must prove that a defendant had the specific intent to violate the reporting requirements of the KORA or whether the State need only prove either (a) a violation, which would be sufficient to establish strict liability, or (b) general intent. The determination of whether a crime is a strict liability, general intent, or specific intent crime is a question of statutory interpretation and is subject to unlimited review by an appellate court. See State v. Richardson, 288 Kan. ___, 209 P.3d 696 (2009); State v. Esher, 22 Kan.App.2d 779, 784, 922 P.2d 1123, rev. denied 260 Kan. 997 (1996), overruled on other grounds by State v. Schoonover, 281 Kan. 453, 133 P.3d 48 (2006).
The statute in question in this appeal derives from the Habitual Sex Offender Registration Act (Act), which was enacted in 1993. L.1993, ch. 253, secs. 17-26, originally codified as K.S.A.1993 Supp. 22-4901 et seq. The Act provided for compulsory registration of habitual violent sex offenders and made violations of the Act class A nonperson misdemeanors. The Act has been amended a number of times in subsequent legislative sessions. In 1997, the legislature changed the name to the Kansas Offender Registration Act. L.1997, ch. 181, sec. 7. In 1999, the legislature increased the penalty for violating the KORA to a severity level 10 nonperson felony. L.1999, ch. 164, sec. 30.
In 2006, the legislature amended the KORA in several ways. Two significant changes included the legislature's raising the severity level to a severity level 5 person felony and requiring registered offenders to report in person to the local sheriff's office twice a yearonce during the month of the offender's birthday and once during the sixth month following the birth monthto update the offender's information, to have a photograph taken, and to pay a $20 fee. K.S.A. 2006 Supp. 22-4903; K.S.A.2006 Supp. 22-4904(d). Since 2006, the legislature has increased the number of in-person reporting requirements for registered sex offenders. Currently, any person who is required to register "shall report in person three times each year to the sheriff's office in which the person resides or is otherwise located." K.S.A. 22-4904(c). The offender must report once during the month of his or her birthday and every four months thereafter. And each time the person reports to the sheriff's office, he or she "shall submit to the taking of an updated photograph," and "shall remit payment to the sheriff in the amount of $20." K.S.A. 22-4904(d), (e).
The failure to comply with the reporting requirements is criminalized by K.S.A. 22-4903(a), which states in part: "Any person who is required to register as provided in the Kansas offender registration act who violates any of the provisions of such act, including all duties set out in K.S.A. 22-4904 through 22-4907, and amendments thereto, is guilty of a severity level 5, person felony." See State v. Cook, 286 Kan. 766, 775-76, 187 P.3d 1283 (2008) (defendant, although aware of duty to report, did not do so and was guilty of crime).

Intent
In considering the intent required by these provisions, we begin with the question *417 of whether the crime is a strict liability offense. The State did not argue strict liability before the district court or in its brief on appeal but raised the issue in a letter of supplemental authority and at oral argument. See Supreme Court Rule 6.09 (2008 Kan. Ct. R. Annot. 47). There is no merit to this argument.
In Kansas, strict liability is limited to the circumstances defined in K.S.A. 21-3204, which states:
"A person may be guilty of an offense without having criminal intent if the crime is: (1) A misdemeanor, cigarette or tobacco infraction or traffic infraction and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described; or (2) a violation of K.S.A. 8-1567 or 8-1567a [relating to driving under the influence] and amendments thereto."
The criminal conduct in the present case does not meet the strict liability criteria because the offense of failure to report as defined in K.S.A. 22-4903 and K.S.A. 22-4904 is a felony and is not a misdemeanor, an infraction, or related to driving under the influence.
Next, we turn to the issue considered by the district court: Whether the crime defined in K.S.A. 22-4903 for a failure to report as required by K.S.A. 22-4904 is a specific or general intent crime. Resolution of the issue is guided by several general issues related to the principles of criminal liability, most of which are stated in Article 32 of the Kansas Criminal Code. K.S.A. 21-3201 states that except as otherwise provided, criminal intent is an essential element of every crime defined by the criminal code. General criminal intent, described in K.S.A. 21-3201(a), may be established by proof that the conduct of the accused person was intentional or reckless. The State focuses only on intentional conduct in this case, conceding that the application of reckless intent would not apply to the prosecutions of alleged violations of K.S.A. 22-4904.
Intentional conduct is defined as conduct that is purposeful and willful and not accidental. As used in the criminal code, the terms "knowing," "willful," "purposeful," and "on purpose" are included within the term "intentional." K.S.A. 21-3201(b). Simply stated, general criminal intent under K.S.A. 21-3201 is the intent to do what the law prohibits. To prove general intent, it is not necessary for the State to prove that the defendant intended the precise harm or the result that occurred. See State v. Mountjoy, 257 Kan. at 170, 891 P.2d 376. Further, the State "is not obligated to prove an intent to violate a particular statute but rather the intent to do the criminal act which violated the statute." State v. Kirtdoll, 206 Kan. 208, 209, 478 P.2d 188 (1970). In other words, "all that is required is proof that the person acted intentionally in the sense that he was aware of what he was doing." State v. Hodge, 204 Kan. 98, 108, 460 P.2d 596 (1969).
More is required if a statute requires proof of a specific intent, however. Recently we explained: "The distinction between general intent and specific intent crimes is `whether, in addition to the intent required by K.S.A. 21-3201, the statute defining the crime in question identifies or requires a further particular intent which must accompany the prohibited acts.' [Citation omitted]." State v. Richardson, 288 Kan. at ___, 209 P.3d at 700. In Richardson, we held that specific intent is required by K.S.A. 21-3435(a)(1), which makes it unlawful for a person who knows he or she is infected with a life-threatening communicable disease to knowingly engage in sexual intercourse or sodomy with another individual with the intent to expose that individual to that life-threatening communicable disease. In addition to requiring general intentmade clear by requiring that the conduct must be "knowing"the statute defines a particular intent that must accompany the specific act by requiring an intent to expose the sex partner to the life-threatening communicable disease. Richardson, 288 Kan. at ___, 209 P.3d at 700.
As we noted in Richardson, Kansas' appellate courts have consistently interpreted statutes that define a crime by using the phrase "with intent to" as requiring a specific intent element. We cited several examples. See, e.g., State v. Harper, 235 Kan. 825, 827, 685 *418 P.2d 850 (1984) (burglary, K.S.A. 21-3715[a], defined as entering a building "with intent to commit a felony, theft or sexual battery therein," is a specific intent crime); State v. Wells, 223 Kan. 94, 98, 573 P.2d 580 (1977) (indecent liberties with a child, K.S.A. 21-3503[a][1], providing that prohibited conduct be done with "intent to arouse or satisfy the sexual desires of either the child or the offender, or both," is a specific intent crime); State v. Meinert, 31 Kan.App.2d 492, 499, 67 P.3d 850, rev. denied 276 Kan. 972 (2003) (criminal threat, K.S.A. 21-3419[a], defined as "any threat to . . . [c]ommit violence communicated with intent to terrorize another," requires "a specific intent such as the intent to terrorize"); State v. Ferris, 19 Kan.App.2d 180, 183, 865 P.2d 1058 (1993) (contributing to child's misconduct or deprivation under K.S.A. 21-3612[a][4], defined as "sheltering or concealing a runaway with intent to aid the runaway in avoiding detection or apprehension by law enforcement officers," requires the State to prove specific intent to aid the child in avoiding detection).
In addition to those examples, the crime of felony theft is a specific intent crime. K.S.A. 21-3701 provides, in relevant part: "Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property." (Emphasis added.) See State v. Mitchell, 262 Kan. 434, 437, 939 P.2d 879 (1997).
Yet, another specific intent crime is kidnapping. For a kidnapping to occur, the defendant must not only have the general intent to take or confine a person by force, threat, or deception but must do so with the specific intent to accomplish one of four types of objectives(1) for ransom, (2) to facilitate flight or the commission of a crime, (3) to inflict bodily injury or to terrorize the victim or another, or (4) to interfere with the performance of any governmental or political function. See K.S.A. 21-3420 ("Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to. . . ." [Emphasis added.]); see also State v. Burden, 275 Kan. 934, 69 P.3d 1120 (2003) (discussing K.S.A. 21-3420).
In contrast to these statutes that require specific intent, neither K.S.A. 22-4903 nor K.S.A. 22-4904 identifies or requires a particular intent that must accompany the prohibited acts beyond the general intent required by K.S.A. 21-3201. A general intentsuch as the act of failing to register or to report in person to the sheriff's officeis clearly all that can be read into the plain language of K.S.A. 22-4903. Without statutory language indicating the additional specific intent, the State may prove the crime defined by K.S.A. 22-4903 for failing to comply with the requirements of the KORA, including K.S.A. 22-4904, by establishing a defendant acted with general intent. Specific intent does not have to be proven.
The State's appeal is sustained.