NOT DESIGNATED FOR PUBLICATION

No. 121,803

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARCUS SPENCER WEST,
*Appellant*.

MEMORANDUM OPINION

Appeal from Thomas District Court; KEVIN BERENS, judge. Opinion filed October 30, 2020.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Rachel Lamm*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and BRUNS, JJ.

PER CURIAM: Marcus Spencer West appeals his convictions for criminal threat in violation of K.S.A. 2017 Supp. 21-5415(a)(1), and domestic battery in violation of K.S.A. 2017 Supp. 21-5414(a)(1). West was found guilty by the district court after a bench trial based on the terms of his diversion agreement, the stipulation to the charges in the complaint, and the stipulated facts contained in the affidavit. On appeal, West contends there was insufficient evidence to prove that he committed the crimes charged. After viewing the evidence in the light most favorable to the State, we find there was sufficient evidence to support the convictions. Accordingly, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

This factual summary is based on the stipulated facts contained in West's diversion agreement, based on the complaint and affidavit, which the district court considered prior to finding West guilty of criminal threat and domestic battery.

On July 7, 2017, Colby Police Officer Cody Shaw responded to a Pilot gas station and convenience store regarding a report of a man hitting and pushing a woman. The man was later identified as West and the woman was identified as West's fiancé, Andrea Strutt. Upon arrival, Officer Shaw spoke with the store manager, Bobby Morgan, who advised that West had left the premises and Strutt was in the store. Morgan told the officer that West had followed Strutt into the store and cussed at her and other customers.

Officer Shaw and Officer Steven Nelson spoke with West. As they conversed, Officer Shaw noticed that West was intoxicated, smelled of alcohol, had difficulty balancing himself, and appeared to have urinated on himself. West told the officers that he and Strutt had only argued and that he had not done anything wrong.

Officer Shaw then interviewed Strutt. According to Strutt, she and West were previously at her boss' house and drove to the Pilot gas station to purchase cigarettes. On the way there, the couple got into an argument about Strutt smoking too much and spending too much of West's money. West began hitting Strutt in the face. Officer Shaw noticed bruising on both sides of Strutt's face and blood on her bottom lip. Strutt advised that West only acted like this when he drank too much. Officer Shaw noticed that Strutt smelled of alcohol and she confirmed that she drank three beers while at her boss' house.

Officer Shaw spoke with West again and asked him what happened. West denied any wrongdoing after the officer asked him about Strutt's cut lip and her facial bruises. Officer Shaw arrested West without incident. After the officer placed West in his patrol

2

vehicle, West asked him if he was a police officer, and Officer Shaw acknowledged that fact. West also asked Officer Shaw why the officer was inside West's vehicle, and Officer Shaw informed West that he was inside a patrol vehicle. West asked whether Strutt, whom he identified as his fiancé, was also under arrest, and Officer Shaw stated that she was not under arrest.

According to Officer Shaw, West told him, "I'm bad, but I've never slit anyone[']s throat and got caught, I've killed mother [expletive], I've killed a lot [of] people in my life." West also referenced an intention to beat a drug dealer with a baseball bat. Officer Shaw later found out that when Strutt was in the women's restroom at the Pilot gas station West told her that he would slit her throat. The State subsequently filed a complaint against West and charged him with one count each of criminal threat, domestic battery, and disorderly conduct. The disorderly conduct charge was later dismissed.

In December 2017, after charges were filed against West, he entered into a diversion agreement with the State. As part of the agreement, West waived all rights to a speedy arraignment, a speedy trial, and the right to a trial by jury. West also agreed to a trial on stipulated facts if he violated the terms of the agreement. The following provisions of the diversion agreement are relevant to this appeal:

> "It is further agreed and stipulated that if the Defendant fails to fulfill all the terms and conditions of this Diversion Agreement and these proceedings are resumed, such proceedings, including any appeal, shall be conducted *on the record of the stipulations herein set forth and furthermore, the Defendant shall stipulate to the charge*(*s*) described above.
> "... any trial in this matter will be *on the facts stipulated under this Diversion Agreement*.
> "*It is further stipulated by the Defendant that the Defendant did the following on or about the 7th day of July, 2017, commit the acts as set forth in the Complaint and*

3

*Affidavit filed in the above-captioned matter which are incorporated herein by reference.*" (Emphases added.)

In January 2019, the State filed a motion to revoke West's diversion. The State alleged that West failed to abstain from drugs and alcohol, failed to provide proof of a drug and alcohol evaluation, failed to pay court costs, and failed to report monthly to his probation officer. On March 6, 2019, after a hearing, the district court revoked West's diversion.

On June 20, 2019, following a preliminary hearing and arraignment, the district court presided over a bench trial on stipulated facts. At that time, West contended the affidavit did not support the criminal threat charge because his intoxication prevented him from forming the requisite specific intent to place Strutt in fear. Moreover, West argued the facts set forth in the affidavit did not support the domestic battery charge because they did not establish that West and Strutt were family members.

The district court rejected both of West's arguments and found him guilty of criminal threat and domestic battery based upon the terms of the diversion agreement, the stipulation to the charges in the complaint, and the facts contained in the affidavit. West was sentenced to a controlling sentence of 20 months' imprisonment.

West timely appeals.

SUFFICIENCY OF EVIDENCE

West contends there was insufficient evidence to support his convictions for criminal threat and domestic battery. We will individually address the sufficiency of evidence issue as it pertains to each conviction.

4

Generally, when the sufficiency of the evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the prosecution and determines whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In making its determination, an appellate court does not reweigh evidence, make witness credibility determinations, or resolve evidentiary conflicts. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). When a case is decided on stipulated facts, appellate courts exercise de novo review over sufficiency of the evidence claims. *State v. Dull*, 298 Kan. 832, 840, 317 P.3d 104 (2014).

*Conviction for Criminal Threat*

West was charged in the complaint with criminal threat under K.S.A. 2017 Supp. 21-5415(a)(1) for communicating "a threat to commit violence communicated with the intent to place another, to-wit:  Andrea Strutt, in fear." As part of the diversion agreement, West stipulated that he did "commit the acts as set forth in the Complaint and Affidavit." Relevant to this appeal, criminal threat is a specific intent crime. *State v. Meinert*, 31 Kan. App. 2d 492, 499, 67 P.3d 850 (2003).

On appeal, West cites K.S.A. 2017 Supp. 21-5205(b), which provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

According to West, "if [he] was intoxicated to an extent that he could not form the particular intent required as one of the elements of criminal threat, he could not be found guilty of that crime." In support of his argument, West points to Officer Shaw's statements in the affidavit indicating that West smelled of alcohol, was "stumbling and swaying and appeared to be intoxicated," and that "the crotch area of West's jeans was

5

wet as if he had urinated [on] himself," West also highlights Strutt's comment that he behaves badly "if he drinks to[o] much" and West's confusion regarding the car he was seated in after his arrest.

It is true that "[w]hile not a defense to general intent offenses, voluntary intoxication may be used to negate the intent element of specific intent crimes." *State v. Craig*, 311 Kan. 456, 464, 462 P.3d 173 (2020). But West is bound by the diversion agreement which referred to stipulations in the complaint and affidavit that provided sufficient evidence of West's specific intent when he communicated the threat to slit Strutt's throat. First, West stipulated to the charge of criminal threat as described in the complaint, which specifically stated that he possessed the specific intent to harm Strutt. Second, West also stipulated to committing the act of criminal threat as set forth in the complaint. That complaint described West's specific intent when he communicated the threat as "with the intent to place another, to-wit: Andrea Strutt, in fear."

As a general precept, parties are bound to their stipulated facts, and both trial and appellate courts must render judgment based on those facts. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 269, 202 P.3d 7 (2009). Moreover, by entering into the stipulation, a defendant waives his or her right to contest the factual evidence included therein. *State v. Bogguess*, 293 Kan. 743, 745, 268 P.3d 481 (2012).

It is undisputed that West stipulated to having the intent to place Strutt in fear when he threatened to slit her throat. West's conjecture on appeal that intoxication may have diminished his specific intent is contrary to the stipulations that he voluntarily agreed to in order to obtain the benefits of the diversion agreement. Finally, the fact that West and Strutt had an argument that resulted in him striking her about the face prior to telling Strutt that he would slit her throat, convincingly establishes that West intended to frighten Strutt with his threat of escalating violence.

6

Having reviewed all the evidence in the light most favorable to the prosecution, we are convinced that a rational fact-finder could have found West guilty beyond a reasonable doubt of the crime of criminal threat.

*Conviction for Domestic Battery*

West also contends there was insufficient evidence to convict him of domestic battery because the State failed to prove Strutt was a household member. In support, West points out that neither the affidavit nor the complaint stated that Strutt was at least 18 years old. He also argues that in the diversion agreement, he only stipulated to the acts as set forth in the complaint and affidavit and not all the allegations contained therein.

Domestic battery is defined in K.S.A. 2019 Supp. 21-5414(a)(1) as "[k]nowingly or recklessly causing bodily harm to a person with whom the offender is involved or has been involved in a dating relationship or a family or household member." K.S.A. 2019 Supp. 21-5414(e)(2) defines family or household member as:

> "persons 18 years of age or older who are spouses, former spouses, parents or stepparents and children or stepchildren, and persons who are presently residing together or who have resided together in the past, and persons who have a child in common regardless of whether they have been married or who have lived together at any time. 'Family or household member' also includes a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time."

Similar to the analysis used earlier, West is bound by the diversion agreement which referred to stipulations in the complaint and affidavit that provided sufficient evidence of the fact that Strutt was a family or household member at the time she was beaten. First, West stipulated to the *charge* of domestic battery as described in the complaint, which specifically stated that he "caused bodily harm against a family or

7

household member, to wit: Andrea Strutt." Second, West also stipulated to committing the *act* of domestic battery as set forth in the complaint. That complaint identified Strutt as a family or household member at the time she was struck about her face. Considered together, we are convinced the evidence established that Strutt was a family or household member as defined by K.S.A. 2017 Supp. 21-5414(e)(2).

Having reviewed all the evidence in the light most favorable to the prosecution, we are convinced that a rational fact-finder could have found West guilty beyond a reasonable doubt of the crime of domestic battery.

Affirmed.