(244 P.3d 1274)
No. 102,286

STATE OF KANSAS, *Appellee*, v. BLACK 1999 LEXUS ES300, VIN JT8BF28G6X5060235, *Appellant*.

Opinion filed January 7, 2011.

*Jessica J. Travis*, of the Travis Law Firm, L.L.C., of Olathe, and *Kristi C. Hartmann*, of Putnam & Hartmann, L.L.C., of Kansas City, Missouri, for appellant.

*Steven J. Obermeier*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before LEBEN, P.J., PIERRON and BUSER, JJ.

LEBEN, J.: After investigating Andrew Wurtz for dealing marijuana, the police seized his 1999 Lexus ES300 and petitioned to forfeit it since he had used it for selling drugs. Wurtz stipulated that the car was properly subject to forfeiture but insisted that the forfeiture be limited in scope under K.S.A. 60-4106(c) because forfeiting the $8,000 car was grossly disproportionate to the $250 he had gained from the two drug sales conducted from the car.

But Wurtz' argument fails because the inquiry under K.S.A. 60-4106(c) considers all of the circumstances, including related criminal conduct not directly involving the car. The circumstances in Wurtz' case included: Police observing Wurtz possess and sell marijuana on several occasions in a year; Wurtz admitting to selling marijuana to his coworkers; and Wurtz also admitting that he routinely purchased what an officer called a dealer-level amount of the drug. The forfeiture of Wurtz' Lexus worth about $8,000 was not grossly disproportional to his repeated criminal conduct. Moreover, contrary to Wurtz' contentions, K.S.A. 60-4106(c) is not un-

constitutionally vague because it provides objective factors to prevent courts from arbitrarily and discriminatorily applying the statute.

## Factual Background

Because related criminal conduct can be considered when determining whether a forfeiture is grossly disproportionate, we must review Wurtz' activities in some detail.

The police had been investigating Wurtz for dealing marijuana since April 2007. A confidential informant had purchased marijuana from Wurtz at Wurtz' house, and the police had found marijuana in Wurtz' trash. Based on this information, the police obtained a search warrant for his house. On June 22, 2007, officers went to Wurtz' work to get a house key so they could execute the warrant. Wurtz followed them back to his house in his 1999 Black Lexus ES300, which the police then searched. The police found four bags of marijuana that weighed about 1/8th ounce each; the individual packaging suggested that Wurtz sold the drug for profit, and Wurtz admitted that he occasionally sold marijuana to his co-workers.

The police then searched his house and found more marijuana and a scale, which is typically used by those distributing and selling marijuana. Wurtz told the police that he bought about a pound of marijuana every 2 weeks. In this forfeiture proceeding, an officer testified that the amount was impossible for one person to consume in 2 weeks and more consistent with a midlevel dealer. The officer also concluded that the marijuana was a higher grade, hydroponic marijuana that sells for about 10 times the amount of regular marijuana. Based on his observations, the officer estimated the value of the marijuana found in the car to be $400.

The following June in 2008, a confidential informant bought marijuana from Wurtz twice in a gas station parking lot, once on June 11 and then a second time on June 23. Both transactions took place in Wurtz' Lexus. The informant paid Wurtz $130 in the first transaction and $120 in the second. Then on June 27, the informant and Wurtz engaged in a third deal, this time in the informant's car. Wurtz had walked to the rendezvous location—another gas station

parking lot—from another parking lot near his work. This time, the informant paid $60 for the marijuana. The Lexus was not seen during this transaction.

A few days later, on July 3, 2008, the police seized Wurtz' Lexus for his use of it in selling marijuana. The State then petitioned for the car's forfeiture under the Kansas Standard Asset Seizure and Forfeiture Act. Before trial, the parties stipulated that the vehicle was subject to forfeiture; this left only the question of whether the forfeiture was grossly disproportionate to Wurtz' conduct, an inquiry the district court conducts pursuant to K.S.A. 60-4106(c). The district court found that the forfeiture of the car was not grossly disproportionate to Wurtz' repeated drug sales and the large potential penalty provided by statute—up to $300,000—for such sales. The court entered judgment against Wurtz and ordered that the car be released to the police department for its official use. Wurtz appealed.

Since Wurtz agreed that the State had grounds to forfeit the car, he has limited his arguments on appeal to the district court's decision that the forfeiture was not grossly disproportionate to his conduct and his claim that K.S.A. 60-4106(c) is unconstitutionally vague.

### ANALYSIS

I. *The Forfeiture of Wurtz' Lexus Was Not Grossly Disproportionate to His Conduct.*

Although forfeiture proceedings are civil, they are penal in nature and thus subject to the excessive-fines clauses of the Kansas and the United States Constitutions. *In re Tax Exemption Application of City of Wichita*, 255 Kan. 838, 843, 877 P.2d 437 (1994); see *Austin v. United States*, 509 U.S. 602, 604, 125 L. Ed. 2d 488, 113 S. Ct. 2801 (1993); Kan. Const. Bill of Rights, § 9; U.S. Const. Amend. VIII. K.S.A. 60-4106(c) seeks to prevent an excessive-fines violation by limiting the forfeiture's scope when the forfeiture becomes "grossly disproportionate to the nature and severity of the owner's conduct."

The statute includes a list of nonexclusive factors for the court to consider when making this determination:

"(1) The gain received or expected to be received by an owner from conduct that allows forfeiture; (2) the value of the property subject to forfeiture; (3) the extent to which the property actually facilitated the criminal conduct; (4) the nature and extent of the owner's knowledge of the role of others in the conduct that allows forfeiture of the property and efforts of the owner to prevent the conduct; and (5) the totality of the circumstances regarding the investigation." K.S.A. 60-4106(c)(1)-(5).

Wurtz contends that the district court erred in considering the drug transactions that involved Wurtz but did not involve the car; that the court should have used the car's retail value in making its determination; and that the forfeiture was grossly disproportionate to the nature and severity of Wurtz' conduct given the car's high retail value and the two small-dollar drug sales.

We must accept the district court's factual findings when substantial evidence supports them; we then ask whether the findings support the district court's legal conclusions. *Kansas Highway Patrol v. 1985 Chevrolet Astro Van*, 24 Kan. App. 2d 841, 844, 954 P.2d 718 (1998). We do not reweigh evidence or assess witness credibility. *1985 Chevrolet Astro*, 24 Kan. App. 2d at 844. In deciding the ultimate legal issues here, which includes the interpretation of K.S.A. 60-4106(c), we must make an independent decision without any required deference to the district court. *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007).

We will first discuss the three statutory factors most implicated in this case. We will then evaluate all of the factors as a whole.

*Wurtz' Gain, the Lexus' Facilitation of the Criminal Conduct, and the Overall Circumstances*

First, Wurtz' actual gain from the observed sales in his Lexus was only $250. But Wurtz' additional conduct and admissions indicate that his drug-dealing activities were ongoing and that he thus expected to gain a lot more from those activities through the use of his Lexus. The police found $400 worth of marijuana in the car in June 2007. At that time, Wurtz admitted to buying dealer-level amounts of the drug and admitted that he sold the drug to his coworkers. More high-grade marijuana was found in his house. A year later, he was still engaging in sales of the drug, some of which were in conducted in the Lexus.

Wurtz insists that it's improper to consider the two events not involving the vehicle—the drugs found in a search of his house and the sale in the informant's car—when deciding whether the forfeiture was proportional. He maintains that we cannot consider these events since they couldn't be a basis for forfeiting the vehicle, *i.e.*, the car didn't "facilitate" the criminal conduct in those instances. The State argues that the vehicle was used to facilitate these transactions since it could be inferred that Wurtz needed his Lexus to transport the marijuana to his home and to transport himself to the last confidential informant drug buy.

Both parties unduly limit the inquiry that must be made under K.S.A. 60-4106(c). Whether the car facilitated the criminal conduct determines if it can be forfeited in the first place—an inquiry conducted pursuant to K.S.A. 60-4105. Here, the parties have already stipulated that Wurtz' Lexus was subject to forfeiture.

On the other hand, a plain reading of K.S.A. 60-4106(c) reveals that it doesn't require the court to limit its grossly disproportionate analysis to only those instances that the forfeiture property facilitated. The "extent to which the property actually facilitated the criminal conduct" is only one of several factors to be considered; the statute instructs that we also consider the nature and severity of the owner's conduct and "the totality of the circumstances regarding the investigation." "Investigation" is broad enough to encompass the police observations of all of Wurtz' drug dealings, including those not directly involving the car. See Black's Law Dictionary 902 (9th ed. 2009) ("investigate" means to make a suspect the subject of a criminal inquiry).

The United States Supreme Court and other jurisdictions consider the defendant's other criminal conduct when making analogous grossly disproportionate analyses. See *United States v. Bajakajian*, 524 U.S. 321, 338, 141 L. Ed. 2d 314, 118 S. Ct. 2028 (1998) (consider whether violation is related to other illegal activities); *United States v. Sabhnani*, 599 F.3d 215, 262 (2d Cir. 2010) (consider the offense committed and its relation to other criminal activity); *United States v. Bader*, 2010 WL 2681707, at *1 (D. Colo. 2010) (same); *Howell v. State of Ga.*, 283 Ga. 24, 26, 656 S.E.2d 511 (2008) (same).

The State also contends that Wurtz cannot now object to the consideration of these other drug-related events since he did not object when evidence about them was admitted at trial. Wurtz replies that he raised the issue of the evidence's admissibility in his pretrial documents and trial arguments. But it is irrelevant whether Wurtz made an objection below since the issue is not whether the evidence should have been excluded, either because it is immaterial, irrelevant, hearsay, improper character evidence, unduly prejudicial, etc. See *State v. Riojas*, 288 Kan. 379, 383, 204 P.3d 578 (2009) (the first step to admissibility is to determine if the evidence is relevant; then, the statutory rules governing the admission and exclusion of evidence are applied). Rather, the question is whether a district court is allowed to consider such evidence in its grossly disproportionate analysis. We conclude that it is proper to consider the police officers' entire investigation of Wurtz' drug activity in making the grossly disproportionate analysis, including instances not explicitly involving the Lexus.

Another consideration relevant to the investigation's circumstances and the severity of Wurtz' conduct is the potential penalty for the criminal conduct. The district court noted that Wurtz faced a $300,000 potential penalty for each transaction that involved the car. This is the statutory maximum fine for possessing marijuana with the intent to sell. See K.S.A. 21-4503a(a)(2) (severity level 3 drug crimes have a maximum penalty of $300,000); K.S.A. 2009 Supp. 21-36a05(c)(1) (possessing marijuana with the intent to sell is a severity level 3 felony). We cannot agree with the district court that the statutory maximum fine is of significance in Wurtz' case. Fines are of course subject to constitutional excessive-fines analysis, which itself is analogous to the grossly disproportionate analysis the legislature has provided for in K.S.A. 60-4106(c). In addition, K.S.A. 21-4607 places significant other limits on the imposition of fines, including that the court must take into account the defendant's financial resources and the nature of the burden the fine will impose on the defendant. To factor the potential fine into proportionality analysis, the district court must first consider the limitations on fines in K.S.A. 21-4607. Nothing in our record suggests that the district court would have rendered a fine anywhere near

the statutory maximum (if a fine were imposed at all) in the criminal case against Wurtz for the activities noted in this opinion. Because we find the forfeiture of Wurtz' car legal even without consideration of any fine that could have been imposed, we need not give further consideration to the potential fine.

### The Lexus' Value

Wurtz showed that he paid $8,700 for the Lexus in March 2007 and that the Kelly Blue Book's suggested retail value of the car was $8,835 in December 2008. At one point, the State showed that the car had a blue book value of $7,800. It's unclear whether this was the car's trade-in, private-party, or retail value. The district court used an $8,000 value when determining the forfeiture's proportionality; that amount is within the range of values shown by the parties.

Wurtz contends that the district court should have used the car's $8,835 suggested retail value since that value adequately represents the punishment the forfeiture would impose on him. Some courts have used the vehicle's fair market value in their proportionality inquiries. *Spears v. State*, 929 So. 2d 477, 478 (Ala. Civ. App. 2005); *In re Forfeiture of 1990 Chevrolet Blazer*, 684 So. 2d 197, 201 (Fla. App. 1996); *Nez Perce County Prosecuting Attorney v. Reese*, 142 Idaho 893, 899, 136 P.3d 364 (Idaho App. 2006); *In re Forfeiture of Property of Anderson-Melton*, 2000 WL 1720443, at *2 (Ohio App. 2000) (unpublished opinion). One court has used the vehicle's retail value. *State v. One '95 Silver Jeep Grand Cherokee*, 712 N.W.2d 646, 648-52 (S.D. 2006). But most haven't specified which value is proper and have just discussed the vehicle's value in general. See, *e.g.*, *Alexander v. State*, 925 So. 2d 214, 215 (Ala. Civ. App. 2005); *One 1995 Toyota Pick-Up v. District of Col.*, 718 A.2d 558, 564 (D.C. 1998); *One Car, 1996 Dodge X-Cab Truck v. State*, 122 S.W.3d 422, 426 (Tex. App. 2003).

For our discussion, we use the $8,000 value since it was the district court's determination and there was evidence to support it. This is not the right case in which to settle a disagreement about whether trade-in value, value shown by a sale between private parties, or retail value is the proper measure. First, our record is un-

clear about the basis for the value that the State presented, and the district court apparently relied on it to support its value. Second, we find no difference in our analysis whether we use the value the district court used, $8,000, or Wurtz' suggested value, $8,835.

*The Forfeiture of Wurtz' Lexus Was Not Grossly Disproportionate to the Crime.*

In sum, K.S.A. 60-4106(c) provides five nonexclusive factors to be considered, which we now apply in order to his case. First, Wurtz received a gain from the specific conduct that allows forfeiture, the use of his car to facilitate a drug sale. That gain was $250. Second, his car, the property subject to forfeiture, is worth $8,000. Third, the car was directly used in facilitating the drugs worth $250 sold directly from the car; it seems likely that the car was also used in transporting drugs sold outside the car. Fourth, Wurtz knew that he was using the car to facilitate drug sales. Fifth, during the overall investigation of Wurtz' activities, he regularly bought high-grade marijuana in quantities consistent with being a midlevel dealer, and he admitted that he sold marijuana to others. With or without using the car, Wurtz had been involved consistently in selling marijuana. Taking the full picture of Wurtz' actions in context, we conclude that the forfeiture of his car was not a grossly disproportionate punishment. See *City of Hoisington v. $2,044 in U.S. Currency*, 27 Kan. App. 2d 825, 8 P.3d 58 (2000) (finding forfeiture of $2,044 in cash found on defendant not disproportionate to offense of possession of methamphetamine and drug paraphernalia found on her person).

## II. *K.S.A. 60-4106(c) Is Not Unconstitutionally Vague.*

Wurtz also contends that K.S.A. 60-4106(c), which we have just discussed and analyzed, is unconstitutionally vague. He argues that the statute does not provide explicit standards for the court to use when deciding whether the forfeiture was grossly disproportionate.

The State argues that this court should not consider the issue since Wurtz is raising it for the first time on appeal, but the vagueness argument addresses Wurtz' due-process rights, so he has met an exception to the general rule, and this court can decide the issue.

See *Aten v. Kansas Dept. of Revenue*, 29 Kan. App. 2d 30, 32, 22 P.3d 1077, *rev. denied* 271 Kan. 1035 (2001) (an exception exists when considering the issue is necessary to prevent the denial of fundamental rights).

Whether a statute is unconstitutionally vague is a question of law subject to unlimited review on appeal. *State v. Rupnick*, 280 Kan. 720, Syl. ¶ 9, 125 P.3d 541 (2005). A statute's constitutionality is presumed, and it is the court's duty to uphold an attacked statute. 280 Kan. at 736. If a reasonable way to construe the statute exists, this court should construe it in that manner. 280 Kan. at 736.

Kansas courts apply a two-part test to determine whether a statute is unconstitutionally vague. First, the statute should give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. Second, the statute should prevent arbitrary and discriminatory enforcement by providing explicit standards for its enforcement. 280 Kan. at 737; *State v. Martis*, 277 Kan. 267, 298, 83 P.3d 1216 (2004).

Given these factors, we find no merit to Wurtz' argument. Wurtz knew what conduct was forbidden; he conceded that his car was subject to forfeiture. In addition, the statute provides several objective factors for the court to consider when deciding whether a statutorily authorized forfeiture is grossly disproportionate. The statute provides fair warning of the forbidden conduct and provides sufficient safeguards against discriminatory enforcement. See LaFave, 1 Subst. Crim. L. § 2.3 (2d ed. 2003 & 2010 Supp.).

The forfeiture of Wurtz' Lexus was not grossly disproportionate to his conduct, and K.S.A. 60-4106 is not unconstitutionally vague. We therefore affirm the judgment of the district court.