NOT DESIGNATED FOR PUBLICATION

No. 113,505

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF HAYS,
*Appellee*,

v.

STEVEN ANGLE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Ellis District Court; EDWARD E. BOUKER, judge. Opinion filed July 8, 2016. Affirmed.

*Steven Angle*, appellant pro se.

*Curtis Brown*, of Glassman, Bird, Brown & Powell, L.L.P., of Hays, for appellee.

Before MALONE, C.J., LEBEN, J., and JOHNSON, S.J.

LEBEN, J.: It's not every day that the police in Hays, Kansas, get a complaint about a goose on the loose, but the complaint they got on May 4, 2014, wasn't the first. In fact, it was the third police complaint about the two pet geese Steven Angle had been keeping at his home. And after that May complaint—about a goose chasing a woman pushing a stroller near Angle's home—police apprehended the geese and took them into custody. Rather than declaring the geese under arrest and housing them in the local jail, the police impounded the geese and placed them with a local veterinary clinic.

The police cited Angle for violating Hays Municipal Code section 5-3(a), which prohibits keeping animals or fowl in the city if they would "normally be held in stables, sheds, pens, or other places where undomesticated animals are kept." The ordinance specifically lists 12 types of animals or birds that it covers, including chickens, ducks, geese, and turkeys. But Angle claims his geese fit within an exception that allows keeping "animals and fowl which are commonly kept as household pets such as cats, hamsters, rabbits, parakeets, and other comparable animals."

The case is now before us on appeal after two trials: one in municipal court and one in district court.

The municipal court held its trial in July 2014, about 2 months after the incident. Pending trial, the geese had remained at the veterinary clinic, which charged $40 per day for their care. The municipal court found Angle guilty of violating the ordinance and ordered that he pay a $50 fine, the minimum amount allowed under the municipal code for a violation of this provision. In addition, it ordered that he pay $2,430 to the veterinary clinic; the court also provided that after Angle paid the clinic, he could give the geese a new home outside the city limits or have the police chief dispose of the geese. Angle instead exercised his right to appeal to the district court.

When a municipal court decision is appealed to the district court, it is tried there "de novo," or anew, meaning that the first trial no longer counts and the district court hears the case independently. But the district court also convicted Angle (in February 2015). It too entered a $50 fine and ordered him to pay the ongoing veterinary bill for housing the geese before trial.

Angle then appealed to our court. On appeal to us, we do not start over—the district court hears the evidence; we review its work for legal error.

2

Angle makes two claims on appeal. First, he contends that the municipal ordinance is so vague that enforcing it would violate the United States Constitution. Second, he claims that the evidence against him was insufficient to show that he violated the ordinance.

We begin our review of the ordinance with its text. We set out below the key portions of section 5-3, which is entitled, "Keeping of Wild and Domestic Animals":

> "(a) It is unlawful for the owner, lessee, occupant or person in charge of any premises in the city to possess and maintain any animal or fowl within the city which are normally held in stables, sheds, pens, or other places where undomesticated animals are kept, i.e., horses, mules, cattle, sheep, goats, swine, chickens, ducks, geese, turkeys, pigeons, or guineas. This subsection does not apply to:
>
> . . . .
>
>> (3) The maintaining of nonpoisonous and nonvicious animals and fowl which are commonly kept as household pets, such as cats, hamsters, rabbits, parakeets, and other comparable animals, when kept as household pets and in a safe and sanitary manner in accordance with this chapter."
>
> . . . .
>
> "(e) Any animal found within the city in violation of this section shall be impounded by the chief of police or designee. Upon conviction of a violation of this section, the judge of the municipal court of the city shall order the owner . . . to surrender the animal to the chief of police or designee for humane destruction or other disposition. In addition, whoever violates any provision of this section shall be guilty of a misdemeanor and shall be punished by a fine of not less than $50.00 nor more than $500.00."

Under the municipal code, then, residents of Hays cannot keep "any animal or fowl" if that animal or bird is "normally held in stables, sheds, pens, or other places where undomesticated animals are kept." In addition, the code tells us specifically that "horses, mules, cattle, sheep, goats, swine, chickens, ducks, geese, turkeys, pigeons, [and] guineas" fit that description. Accordingly, they can't be kept within the Hays city limits.

3

But Angle argues that an exception in the code allows him to keep *domesticated* geese. After stating that undomesticated animals can't be kept, the code says that this provision "does not apply to" animals and birds that are "commonly kept as household pets, such as cats, hamsters, rabbits, parakeets, and other comparable animals, when kept as household pets and in a safe and sanitary manner." Angle contends this exception applies to his geese—or at least that it *could* be read to apply to them. Because it *could* be read that way, he contends the ordinance is too vague to be enforced.

So we turn now to the standards for determining whether a criminal statute (here, a municipal code) is unconstitutionally vague. Generally, a statute or municipal ordinance is presumed constitutional, and all doubts are resolved in favor of its validity. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629-30, 176 P.3d 938 (2008); see *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 272, 241 P.3d 15 (2010) (noting that same rules apply to consideration of statutes and municipal ordinances). We must interpret the statute in a way that supports its constitutionality if that interpretation can be achieved without distorting the legislature's intention for enacting the statute. *State v. Richardson*, 289 Kan. 118, 124, 209 P.3d 696 (2009). And we must review the statute's meaning independently, without any required deference to the district court. 289 Kan. at 124.

With these background standards in mind, courts use a two-part test to determine whether a specific statute is unconstitutionally vague. First, the statute should give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015); *City of Lincoln Center v. Farmway Co-Op, Inc.*, 298 Kan. 540, 545-46, 316 P.3d 707 (2013); *Dissmeyer v. State*, 292 Kan. 37, 39, 249 P.3d 444 (2011). Second, the statute should provide explicit standards for enforcing it so enforcement is not arbitrary and discriminatory. *City of Lincoln Center*, 298 Kan. at 545-46; *State v. Rupnick*, 280 Kan. 720, 737, 125 P.3d 541

4

(2005); *State v. Black 1999 Lexus ES300*, 45 Kan. App. 2d 168, 176, 244 P.3d 1274 (2011). A vague statute is problematic in that it impermissibly delegates basic policy matters to police officers, judges, and juries for resolution on a case-by-case basis. *Rupnick*, 280 Kan. at 737. The test for vagueness is often described as a common-sense determination about fundamental fairness. *Richardson*, 289 Kan. at 124.

In addition to this general test for vagueness, courts also consider whether the statute clearly applied in the case at hand. A person "to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974); *Hearn v. City of Overland Park*, 244 Kan. 638, 639, 772 P.2d 758, *cert. denied* 493 U.S. 976 (1989). Although there may be rare cases where it would be difficult to determine whether the particular conduct was prohibited, that is not sufficient reason to hold the language too ambiguous to define a criminal offense. *Hearn,* 244 Kan. at 640-41.

Under these standards, we conclude that a person of ordinary intelligence would readily understand that geese aren't allowed in Hays. We think it self-evident that most geese are *not* domesticated fowl. If "kept" by someone, they would usually be kept in a shed or pen or "other place[] where undomesticated animals are normally kept." And geese are one of the 12 birds or animals specifically listed after the abbreviation "i.e.," which means "that is" or "namely." Garner, Garner's Modern American Usage 436 (3d ed. 2009). While the list was probably not meant to be exhaustive—and thus the provision probably should have introduced the list with "e.g.," meaning "for example," rather than "i.e."—in either case, geese were clearly included among the animals and birds *not* permitted.

Angle suggests that his geese are domesticated creatures, and that may well be true. He also cites to Internet resources for those who want to keep geese as pets, suggesting measures to make it easier for humans to live with geese, like having the

geese wear diapers. But none of that changes the fact that *most* geese, like most cattle, *aren't* living in one's house with the family. And the Hays Municipal Code makes it unlawful to possess "any animal or fowl" that is "normally held in stables, sheds, pens, or other places where undomesticated animals are kept," specifically including geese.

Given the clarity of the prohibition—which specifically lists geese—Angle's claim that the *exception* covers geese is untenable. The exception allows common "household pets, such as cats, hamsters, rabbits, parakeets, and other comparable animals." Geese do not seem comparable to parakeets to us, and our understanding is reinforced by the specific listing of geese in the prohibition.

Geese simply aren't allowed to be kept in Hays. Keeping them in the city violates the Hays Municipal Code.

Angle separately argues that the evidence wasn't sufficient to convict him. But we can't review the evidence presented at trial because Angle didn't have the transcript prepared and included in our record on appeal. While Angle says that the City could have provided the record if it supported his conviction, that's not the way appeals work. Angle is the party who is appealing the judgment, and as the appellant, he has the duty to provide a record sufficient to support his claim. Without the transcript, we cannot review it. See Supreme Court Rule 6.02(a)(4) (2015 Kan. Ct. R. Annot. 41); *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013).

Even if we had the transcript, though, it's clear what Angle's argument about the evidence is: He asserts that the City had to prove that his geese were *undomesticated* to show that he couldn't keep them at his Hays residence. We've already explained that we disagree with that legal argument—the Hays Municipal Code prohibits keeping geese in the city, whether or not the geese are domesticated.

6

Finally, we note that Angle has not challenged the City's authority to enact an ordinance prohibiting residents from keeping geese. Such an argument would have been unsuccessful; cities have police-power authority to limit the keeping of animals within city boundaries. See *Bice v. City of Rexford*, No. 97,227, 2007 WL 2915611, at *2 (Kan. App. 2007) (unpublished opinion).

We find no error and affirm the district court's judgment.