NOT DESIGNATED FOR PUBLICATION

No. 115,177

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
SALINA POLICE DEPARTMENT,
*Appellee*,

v.

ONE 2007 FORD MUSTANG AUTOMOBILE, VIN 1ZVFT82H175328282,
*Defendant*,

and

GEORGE LOGAN MEINHARDT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Opinion filed April 14, 2017. Affirmed.

*Roger D. Struble* and *Allie J. Prester*, of Blackwell & Struble, LLC, of Salina, for appellant.

*Anna Jumpponen*, assistant county attorney, and *Amy E. Norton*, assistant county attorney, for appellee.

Before ARNOLD-BURGER, C.J., BUSER and POWELL, JJ.

*Per Curiam*:  The Kansas Standard Asset Seizure and Forfeiture Act, K.S.A. 60-4101 *et seq*., provides that a person's car may be forfeited to the State if the driver uses it in the commission of a felony fleeing or eluding offense in Kansas. See K.S.A. 2016

1

Supp. 60-4104(z). So, after George Logan Meinhardt used his 2007 Roush Ford Mustang to flee from a police officer, the State seized the Mustang. Meinhardt appeals the district court's subsequent order of forfeiture on two grounds. First, he argues that the district court lacked jurisdiction to order the car forfeited because the State failed to file the petition of forfeiture within 180 days of filing the notice of pending forfeiture, in violation of K.S.A. 2016 Supp. 60-4109(a)(2). Because we find that this statutory provision only applies when a claimant files a petition for recognition of exemption pursuant to K.S.A. 60-4110—which Meinhardt did not do—it is inapplicable in Meinhardt's situation and his claim fails. Second, he contends that the forfeiture of the Mustang, valued at $32,500, was grossly disproportionate to Meinhardt's conduct. But, the district court's factual findings were supported by substantial competent evidence, and it came to the correct legal conclusion. Accordingly, we affirm the district court's decision.

FACTUAL AND PROCEDURAL HISTORY

Meinhardt purchased a blue 2007 Roush Ford Mustang from his neighbor. Meinhardt paid $32,500 for the Mustang, with money that he inherited after his father died.

Two months after Meinhardt's purchase, Officer Kevin Reay, a patrol officer with the Salina Police Department, pulled up to a stop light. Reay saw Meinhardt in the lane next to him, driving the Mustang. Reay was familiar with Meinhardt, and knew that Meinhardt did not have a valid driver's license. When the light turned green, Reay got behind the Mustang to conduct a traffic stop. When Reay activated the lights and sirens on his patrol vehicle, Meinhardt did not come to a stop but instead drove away. Reay pursued the Mustang for a few seconds, but a supervising officer advised him to discontinue the pursuit.

2

Reay observed Meinhardt run a red light as he drove away. A woman who was sitting at the light had begun to enter the intersection when her light turned green, but stopped when she heard the noise of the Mustang approaching and the police sirens. She said that the Mustang almost hit her and other cars when it ran the red light. Later that day, a citizen reported seeing the Mustang in the parking lot of Hong Kong Buffet. When Reay arrived at the parking lot, he did not see anyone near the car.

Several days later, Reay saw the Mustang pulling into a gas station. He found Meinhardt inside the gas station and placed him under arrest. Meinhardt was not driving the Mustang that day—it was being operated by Jennifer Vermillion. After a police officer handed Vermillion a piece of paper stating that the police could seize the car, Vermillion gave the keys to the Mustang to the officer. When Reay brought Meinhardt to jail for the earlier felony eluding incident, he found 3.5 grams of methamphetamine in Meinhardt's pants pocket. At the jail, Captain James Norton notified Meinhardt in writing that the Mustang was being seized.

The State filed a notice of pending forfeiture on April 9, 2014. In the notice, the State alleged that the 2007 Ford Mustang had been used to commit the crime of fleeing or attempting to elude from a police officer. The petition also alleged that the Mustang "was used to facilitate the transportation, sale, delivery, or concealment of methamphetamine and items of drug paraphernalia." The notice was served by certified mail on Meinhardt on April 11, 2014. Meinhardt filed a verified claim to the Mustang on April 25, 2014.

At the subsequent trial, Meinhardt's counsel objected to the court's jurisdiction, for reasons that will be detailed below. In addition, although Meinhardt acknowledged that the Mustang was subject to forfeiture, he argued that the forfeiture would be grossly disproportionate to his crime. The district court found that Meinhardt owned the Mustang and that it was subject to forfeiture. The court set over the issue of whether the forfeiture was grossly disproportionate. When the parties reconvened, the district court found that

3

the Mustang was subject to forfeiture and that the forfeiture was not grossly disproportionate to Meinhardt's conduct.

Meinhardt appeals.

ANALYSIS

*The district court had jurisdiction over the forfeiture proceedings.*

Meinhardt's first argument is that the district court did not have jurisdiction over the forfeiture due to the State's failure to adhere to K.S.A. 2016 Supp. 60-4109(a)(2) by failing to file the petition for forfeiture within 180 days of the notice of pending forfeiture. The State concedes that it did not file the petition for forfeiture until 250 days after filing the notice of pending forfeiture. Accordingly, Meinhardt argues that the district court did not have subject matter jurisdiction over the Mustang. The State counters that K.S.A. 2016 Supp. 60-4109(a)(2) is not applicable in this situation. And, even if the provision did apply, it is not a mandatory provision so the State's failure to adhere to the 180-day limit did not deprive the district court of jurisdiction.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

K.S.A. 2016 Supp. 60-4109(a) states that "[f]orfeiture proceedings shall be commenced by filing a notice of pending forfeiture or a judicial forfeiture action." Subsection (a)(2) of the statute states the following:

> "If, after notice of pending forfeiture, a claimant files a petition for recognition of
> exemption pursuant to K.S.A. 60-4110, and amendments thereto, the plaintiff's attorney

4

may delay filing the judicial forfeiture proceeding for a total of 180 days after the notice of pending forfeiture except that if an interest holder timely files a proper petition documenting the complete nature and extent of such holder's interest, including all of the contractual terms and current status, the plaintiff's attorney may delay filing a judicial forfeiture proceeding only if such attorney provides each such petitioner with a written recognition of exemption within 60 days after the effective date of the notice of pending forfeiture, recognizing the interest of such petitioner to the extent of documented outstanding principal plus interest at the contract rate until paid and any attorney fees ordered by a court pursuant to such contract." K.S.A. 2016 Supp. 60-4109.

The plain language of the statute shows that it only applies when a claimant files a petition for recognition of exemption pursuant to K.S.A. 60-4110. K.S.A. 60-4110(a) states that the State "may make an opportunity to file a petition for recognition of exemption available . . . ." If the State chooses to do this, it must indicate that fact in the notice of pending forfeiture. K.S.A. 60-4110(a)(1). K.S.A. 60-4110(a)(2) then states that the owner of the property can either file a claim to the property or file a petition for recognition of exemption.

Here, the State's notice of pending forfeiture informed Meinhardt of his legal options. The notice informed Meinhardt that he could (1) "[f]ile a verified petition for Request for Stipulation of Exemption, claiming some exemption set out in K.S.A. 60-4106," (2) file a verified claim, or (3) do nothing. Meinhardt chose to file a verified claim. His verified claim did not list any grounds for exemption under K.S.A. 60-4106. Because Meinhardt elected to file a verified claim as opposed to a petition for recognition for exemption, the 180-day limit in K.S.A. 2016 Supp. 60-4109(a)(2) does not apply. Thus, it is unnecessary to determine whether K.S.A. 2016 Supp. 60-4109(a)(2) deprives the district court of subject matter jurisdiction.

5

*The forfeiture was not grossly disproportionate to Meinhardt's criminal use of the property.*

Meinhardt's second argument is that the forfeiture was grossly disproportionate to his criminal use of the property. In deciding this issue, we first consider whether substantial competent evidence supports the district court's factual findings. *State v. Black 1999 Lexus ES300*, 45 Kan. App. 2d 168, 171, 244 P.3d 1274 (2011). Then, we exercise unlimited review of the district court's legal conclusions. 45 Kan. App. 2d at 171.

"Although forfeiture proceedings are civil, they are penal in nature and thus subject to the excessive-fines clauses of the Kansas and the United States Constitutions." 45 Kan. App. 2d at 170. The United States Supreme Court has held that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998). K.S.A. 60-4106(c) acknowledges this holding and provides several considerations for courts to make in determining whether a forfeiture is grossly disproportionate. The statute states:

> "(c) Prior to final judgment in a judicial forfeiture proceeding, a court shall limit the scope of a proposed forfeiture to the extent the court finds the effect of the forfeiture is grossly disproportionate to the nature and severity of the owner's conduct including, but not limited to, a consideration of any of the following factors:
> (1) The gain received or expected to be received by an owner from conduct that allows forfeiture;
> (2) the value of the property subject to forfeiture;
> (3) the extent to which the property actually facilitated the criminal conduct;
> (4) the nature and extent of the owner's knowledge of the role of others in the conduct that allows forfeiture of the property and efforts of the owner to prevent the conduct; and
> (5) the totality of the circumstances regarding the investigation." K.S.A. 60-4106(c).

6

*Substantial competent evidence supports the district court's findings.*

The district court made factual findings related to each factor in K.S.A. 60-4106(c). The first factor is the gain received or expected to be received from the conduct that allowed the forfeiture. The district court found that Meinhardt's choice to flee from the police resulted in gaining liberty, even though the freedom only lasted a short time. This is supported by the facts—Meinhardt avoided arrest for a week following his flight.

The second factor is the value of the property. The district court found that the car was valued at $32,500. This is undisputed.

The third factor is the extent to which the property facilitated the conduct. The district court found that "[c]learly the conduct of the fleeing and eluding could only reasonably have been accomplished by the use of the property in question here." In addition, Meinhardt testified that after the officer turned his lights on, Meinhardt "just really didn't feel like going to jail that day" so he "[p]unched it." The type of vehicle Meinhardt was driving, a "souped-up Mustang," certainly made it easier for Meinhardt to "punch it" and outrun the police. We question whether he would have made the same decision had he been driving a 2007 Honda Civic worth $1,000. However, the district court noted that it was unclear how the Mustang facilitated the mere possession of methamphetamine.

The fourth factor is the nature and extent of the owner's knowledge of the role of others in the conduct that allows forfeiture of the property. The district court found that Meinhardt was solely responsible for the conduct.

Finally, the district court considered the totality of the circumstances. The district judge noted that Meinhardt pled guilty to fleeing and eluding a law enforcement officer, a severity level 9 felony. Not all fleeing and eluding violations are classified as felonies—

7

Meinhardt's offense was classified as a felony because it was predicated on reckless driving as defined by K.S.A. 8-1566, of which Meinhardt was also convicted. See K.S.A. 2016 Supp. 8-1568(b)(1)(C). The district court also considered Meinhardt's conviction for possession of methamphetamine. The court noted that both felony fleeing and eluding and possession of methamphetamine are offenses covered by Kansas' laws on asset seizure and forfeiture. See K.S.A. 2016 Supp. 60-4104(b); K.S.A. 2016 Supp. 60-4104(z). The district judge recalled that Meinhardt testified that he fled because he "didn't feel like being arrested." The district judge said that it was fortunate that Meinhardt's actions did not result in injury to anyone or property damage, "but the very real threat of [Meinhardt's] conduct posed not something to be disregarded in the Court's analysis."

The district court's factual findings are supported by substantial competent evidence in the record. Meinhardt acknowledges that the district court made factual findings related to each factor, but he argues that the district court was required to perform a weighing analysis before concluding that the forfeiture was not grossly disproportionate. However, the statute does not require a weighing analysis. It merely states that the district court should consider the factors. See K.S.A. 60-4106(c). And, Meinhardt does not cite any caselaw that suggests that the district court must engage in a weighing analysis.

*The forfeiture was not grossly disproportionate to the crime.*

The district court's factual findings support its legal conclusion that the forfeiture was not grossly disproportionate.

Kansas courts have previously upheld forfeitures of cars predicated upon conduct that presented a much lower risk of injury than Meinhardt's fleeing and eluding. For example, in *State v. Black 1999 Lexus ES300*, 45 Kan. App. 2d 168, the State seized a Lexus worth about $8,000 on the basis that the owner of the Lexus was selling marijuana.

While the police only observed the owner make $250 in drug sales from the car, the owner admitted that he "regularly bought high-grade marijuana in quantities consistent with being a midlevel dealer, and he admitted that he sold marijuana to others." 45 Kan. App. 2d at 175. Considering the owner's consistent involvement with selling marijuana, the court held that forfeiture of the Lexus was not a grossly disproportionate punishment. 45 Kan. App. 2d at 175. While Meinhardt's Mustang is more valuable than the Lexus, Meinhardt's conduct also posed a significantly higher risk to the public. The district judge considered this in his analysis, noting that it was "only by good fortune that serious injury and significant property damage was not suffered by innocent motorists who found themselves in the intersection as [Meinhardt] proceeded through it against the light in his effort to elude law enforcement."

Another factor supporting the district court's conclusion, although not relied on by the district court, is the potential statutory fine for felony fleeing and eluding. In *Bajakajian*, the United States Supreme Court stated that "[i]n considering an offense's gravity, the other penalties that the Legislature has authorized are certainly relevant evidence." 524 U.S. at 339 n.14. There, the federal government sought forfeiture of $357,144 from Hosep Bajakajian. Bajakajian had "attempted to leave the United States without reporting, as required by federal law, that he was transporting more than $10,000 in currency." 524 U.S. at 324. In concluding that the forfeiture was disproportionate, the Supreme Court noted that Congress had only authorized a penalty of up to $5,000 for Bajakajian's offense. 524 U.S. at 339-40.

Here, the Kansas Legislature has authorized a fine of up to $100,000 for severity level 9 fleeing and eluding. K.S.A. 2016 Supp. 21-6611(a)(3). The forfeiture of the Mustang, valued at only $32,500, is far below the authorized statutory penalty for Meinhardt's crime. Additionally, the Kansas Legislature has specified that "felony violations of fleeing or attempting to elude a police officer, as described in K.S.A. 8-1568" are offenses that give rise to forfeiture. K.S.A. 2016 Supp. 60-4104(z); see also

9

*United States v. Jordan*, No. 12-10203-MLB, 2013 WL 139767, at *1 (D. Kan. 2016) (unpublished opinion) (holding that forfeiture of a vehicle, valued at under $10,000, was not grossly disproportionate to the offense of severity level 9 fleeing and eluding because the Kansas Legislature authorized a penalty of up to $100,000 for the offense). But see *Black 1999 Lexus ES300*, 45 Kan. App. 2d at 173-74 (noting that fines are subject to constitutional excessive-fines analysis, the court must take into account financial resources when assessing fines, and there is nothing in the record to suggest that the court would have assessed any fine, let alone one that approached the statutory maximum). Again, although the district court did not consider the statutory fine in its analysis, we find that it provides even further support for the district court's conclusion that the forfeiture was not grossly disproportionate.

*Conclusion*

Here Meinhardt's car was a direct and essential part of the crime. Because it was a "souped up" car, Meinhardt believed he could "punch it" and outrun police. Meinhardt chose to run from police because he did not want to go to jail, which he believed would happen if he were stopped. His reckless driving in an attempt to flee and elude police presented a significant danger to the public and resulted in a serious felony offense.

We conclude that the district court's factual findings were supported by substantial competent evidence. Moreover, the district court's legal conclusion was correct. Based upon Meinhardt's conduct and the totality of the circumstances considered, the forfeiture was not grossly disproportionate. The district court's decision is affirmed.

Affirmed.