NOT DESIGNATED FOR PUBLICATION

No. 123,245

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HERSHEL ALFONSO KEMP,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed September 10, 2021. Affirmed.

*Christopher Ambrose*, of Harvest Legal, of Emporia, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., ISHERWOOD, J., and MCANANY, S.J.

PER CURIAM: Hershel Alfonso Kemp appeals his conviction for misdemeanor intimidation of a witness, in violation of K.S.A. 2014 Supp. 21-5909. Kemp argues that the State failed to show that Kemp had malicious intent. Because a reasonable jury could have found Kemp guilty from the evidence, we affirm Kemp's conviction.

1

FACTS

Kemp sent letters to his wife, Wanda Kemp, between December 2014 and February 2015. Kemp sent the letters to Wanda from Lyon County Detention Center while awaiting his criminal trial in which Wanda was a witness and K.R. was the alleged victim.

Emporia Police Detective David Holmes collected six letters from Kemp to Wanda. Based on those letters, the State charged Kemp with aggravated intimidation of a witness, in violation of K.S.A. 2014 Supp. 21-5909(b), and intimidation of a witness, in violation of K.S.A. 2014 Supp. 21-5909(a).

At trial, the Lyon County Detention Administrator testified that jail records showed that Kemp mailed the letters to Wanda.

Holmes testified that he was the detective in the case and that he knew Kemp, Wanda, and K.R. Wanda gave some letters to Holmes when he went to her house. Holmes focused on statements Kemp made in his first letter to Wanda that related to the police investigation:

"'Please do what you . . . [c]an [to] help me get through . . . this. I have spoken to . . . my family and told them to stay clear of this . . . . If you still love me, you do what you can to get me out and keep them lying-ass cops away from [K.R.] and away from our home. They're trying to build a case against me, and they are just using [K.R.] to do so.'"

In a second letter, Kemp stated:

"'Hey, Baby, I have an attorney. . . . Her name is Ms. Julia Spainhour. She asked me how much I can pay to get out, but I think she is going to get me out. Look, I need your support. Contact this lady . . . and you help her get me out of here. Do what you can

2

to make this BS go away. She is from Topeka. Call or whatever. . . . So just let's concentrate on getting me out and quit trying to leave me while I am in jail. LOL. This BS needs to be in our rearview.'"

In a third letter, Kemp made the following statements which Holmes considered noteworthy during his investigation:

"'I'm going to say this, we both know what happened, as well as we both know what is right and what's wrong. I want that to influence your . . . decision as to whether or not you help me get out of this situation. You and only you have that power, and I will let your conscience speak for itself and dictate your decision.[']"

Holmes also concentrated on language from a fourth letter from Kemp, in which Kemp explained the following:

"'I have been very honest with you in knowing how serious this is and knowing if you enforce this, my life is over and I'll never see my kids or the light of day again. All they really need is a testimony, but they say the truth shall set you free.'
. . . .
"'I've been looking this stuff up, and in these cases the courts take this shit very serious, and the prosecutor on that case is looking for an automatic conviction. The law book says the only way of dismissal or acquittal is if the person lies or refuses to testify. . . .'
. . . .
"'So if you don't believe me and you came to court to get me put to an early death and know that big Lindsey is coming next month, I get it. . . . [F]orgive me if I'm wrong, but hopefully I only see you when I get out.'"

Finally, Wanda testified at trial that she received Kemp's letters, although some were sent to her and some were sent to her aliases.

On the second day of jury deliberations, the jury told the trial court that it could not come to a unanimous decision on count 1. After further deliberation, the jury remained deadlocked on count 1 but found Kemp guilty on count 2. The trial court sentenced Kemp to six months in jail, with 180 days of jail credit.

Kemp appeals his conviction.

ANALYSIS

*Was the evidence sufficient to convict Kemp of intimidation of a witness?*

Kemp argues that the State failed to present sufficient evidence for a rational fact-finder to find him guilty beyond a reasonable doubt. He contends that no malicious intent could be derived from the letters he mailed to Wanda. He argues that the State selectively picked statements from the letters, stacking inference on inference to arrive at an intent to intimidate. The State argues that circumstantial evidence showed Kemp's intent to thwart or interfere with the orderly administration of justice. The State claims that the content of the letters showed an attempt to dissuade Wanda from testifying.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

A verdict may be supported by circumstantial evidence, if that evidence provides a basis for a reasonable inference by the fact-finder about the fact in issue. Circumstantial evidence, to be sufficient, need not exclude every other reasonable conclusion. A conviction of even the gravest offense can be based entirely on circumstantial evidence.

4

*State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016); but see *State v. Richardson*, 289 Kan. 118, 127, 209 P.3d 696 (2009) (circumstances used to infer guilt must be proved and cannot be inferred or presumed from other circumstances). There is no legal distinction between direct and circumstantial evidence in their respective probative value. *State v. Lowery*, 308 Kan. 1183, 1236, 427 P.3d 865 (2018).

Kemp incorrectly focuses on a lack of malice toward Wanda. Kemp argues that the State relied on Holmes' testimony to establish malicious intent without support. According to Kemp, Holmes started with the position that the letters were intended to intimidate Wanda from testifying. Thus, Holmes intended "to find any jot or tittle [*sic*] in the letters" to support an intent to intimidate. Kemp argues that the selective presentation of statements from the letters, with Holmes' conclusory inferences, could not support a jury finding that Kemp sent the letters with malicious intent. But the State's case did not depend on showing that Kemp expressed malice toward Wanda.

The State responds that the evidence at trial was sufficient to show that Kemp intended to prevent or dissuade Wanda from attending or giving testimony in the case proceedings. The State argues that reading Kemp's letters from December 2014 to February 2015 together shows Kemp's intent to thwart or interfere with the orderly administration of justice.

K.S.A. 2014 Supp. 21-5909 states:

> "(a) Intimidation of a witness or victim is preventing or dissuading, or attempting to prevent or dissuade, with an intent to vex, annoy, harm or injure in any way another person or an intent to thwart or interfere in any manner with the orderly administration of justice:
> (1) Any witness or victim from attending or giving testimony at any civil or criminal trial, proceeding or inquiry authorized by law."

5

The trial court instructed the jury as follows:

"The defendant is charged in Count 2 with intimidation of a witness.

"The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant prevented, dissuaded, attempted to prevent, or attempted to dissuade a witness, from attending or giving testimony at any criminal trial, preliminary hearing or proceeding or inquiry authorized by law in case 2014CR612.

"2. This act was done with the intent to thwart or interfere in any manner with the orderly administration of justice.

"3. This act occurred on, about or between the 23rd day of December, 2014 and the 20th day of January, 2015, in Lyon County, Kansas."

This jury instruction matches PIK Crim. 4th 59.060. Kemp does not argue that the jury was improperly instructed. Kemp also does not challenge the language in the pattern instructions or the statute. See *State v. Doyle*, No. 119,174, 2019 WL 3047432, at *4-6 (Kan. App. 2019) (unpublished opinion) (rejecting appellant's argument that K.S.A. 2016 Supp. 21-5909 is unconstitutionally vague), *rev. denied* 311 Kan. 1047 (2020).

On appeal, Kemp argues that the State failed to show "malicious intent." But K.S.A. 2014 Supp. 21-5909 does not describe the requisite intent as "malicious." Instead, the two possible intents are either "an intent to vex, annoy, harm or injure in any way another person" or "an intent to thwart or interfere in any manner with the orderly administration of justice." K.S.A. 2014 Supp. 21-5909(a). The jury here was instructed to determine whether Kemp intended to thwart or interfere with the administration of justice. The jury was not instructed to decide whether Kemp intended to vex, annoy, harm, or injure Wanda. K.S.A. 2014 Supp. 21-5909(a)(1) does not require a threat of physical harm or negative consequences. *Doyle*, 2019 WL 3047432, at *3.

6

The overall text of the letters, collectively, supports the jury's conclusion that Kemp intended to thwart or interfere with the orderly administration of justice by preventing or dissuading Wanda from giving testimony. Kemp begins his attempts to influence Wanda by stating the following: "'I see you have dismissed the protection order, but . . . [the criminal] charges have not been dismissed yet.'" He then overtly directs Wanda not to cooperate with law enforcement, saying: "'If you still love me, you do what you can to get me out and keep those lying-ass cops away from [K.R.] and away from our home.'"

As for dissuading Wanda from testifying, Kemp's early statements are less direct. He begins by saying: "'Please do what you . . . [c]an [to] help me get through . . . this. I have spoken to . . . my family and told them to stay clear of this.'" These statements are ambiguous, as Kemp correctly argues. The phrase "stay clear of this" could imply that Kemp attempted to dissuade his family from testifying in a criminal proceeding, which would be one of the elements of intimidating a witness that the jury was instructed on. But the phrase could also imply noncooperation with law enforcement, which is not one of the elements in the jury instruction on intimidating a witness. In either case, the statement "do what you can to help me get through this" shows a clear intent for Wanda to aid Kemp in a similar way as his family aided him in staying "'clear of this.'"

But in a later letter, Kemp more directly tells Wanda that she can help him by not testifying. He suggests that she not testify so that he can see her when he is released. Kemp told Wanda the following: "'I have been very honest with you and knowing how serious this is and know if you enforce this, my life is over and I'll never see my kids or the light of day again. All they really need is a testimony.'" Kemp followed that statement with: "'I've been looking this stuff up, and in these cases the courts take this shit very serious, and the prosecutor on this case is looking for an automatic conviction. The law book says the only way of dismissal or acquittal is if the person lies or refuses to testify.'" Finally, Kemp makes it clear that Wanda's choice is between seeing Kemp in the

7

courtroom while testifying or seeing Kemp as a free man if she does not testify: "'[I]f you don't believe me and you came to court to get me put to an early death . . . but hopefully I only see you when I get out.'" Here, Kemp gives Wanda a choice about his future freedom: Come to court and insure his early death with her testimony or not come to court and see him as a free man again.

Kemp's request is clear when placed beside his repeated requests to "make this BS go away" and "concentrate on getting me out." In his brief, Kemp's argument that the letters lack "malicious intent" seems to be an assertion that the letters are not threatening and do not show an intent to vex, annoy, harm, or injure Wanda. In this respect, Kemp makes a fair point. Kemp's statements, placed in context, read as entreaties for help rather than threats. But the jury was not instructed to determine whether the letters were threatening. Instead, the jury was instructed to find whether Kemp prevented, dissuaded, attempted to prevent, or attempted to dissuade Wanda from giving testimony at a criminal proceeding, with the intent of thwarting or interfering with the orderly administration of justice. The jury found Kemp guilty, and the text of his letters provides sufficient evidence for a reasonable fact-finder to make that determination.

For the preceding reasons, we affirm.

Affirmed.